DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Gregg A. Andray, appeals a grant of summary judgment in favor of appellees Grange Mutual Casualty Company ("Grange") and Jeffrey Travis ("Travis"). For the following reasons, we affirm the judgment of the Lucas County Court of Common Pleas.
 {¶ 2} Appellant's deposition testimony provided the following facts. In June 1997, appellant purchased the house at issue. Soon after purchasing the house, appellant decided to upgrade the electrical system, plumbing system, and make some structural changes. Appellant's desired structural changes included installing new window wells for the basement, installing a full bathroom on the lower level, and removing part of the flooring in order to construct a second staircase leading down to the lower level.
 {¶ 3} Appellant hired a mechanical draftsman to draw design plans for the changes, and the plans were approved by the city of Toledo. Appellant hired two contractors to perform the work. One contractor was responsible for updating the electrical system, and another contractor was responsible for updating and installing new plumbing and making the structural changes.
 {¶ 4} Within a week after the electrical contractor began work, the Toledo Edison Company ("Edison") contacted appellant. Edison told appellant that field inspectors had discovered a "hot box" in appellant's home. A "hot box" enables "illegal tampering and tapping into the power without complete authorization" by Edison. Edison also informed appellant that the work done was "very defective," "incorrect," and "dangerous," and advised him to contact the electricians who performed the work.
 {¶ 5} Appellant contacted the electrical contractor, who informed appellant that the work was not yet completed, and that Edison was incorrect. After some investigation, appellant ultimately hired a different electrician to fix the problems. The new electrician informed appellant that the work the first electrical contractors performed was "potentially dangerous" and "unbelievable." Appellant's house became uninhabitable for a period of time as a result of the electrical problems.
 {¶ 6} Appellant encountered other difficulties with the work performed by the plumbing and structural contractor, Peter Elling. Elling installed new fixtures in the lower level bathroom, the kitchen, and the upstairs bathroom. Elling also replaced some old copper pipes with plastic pipes, and installed additional pipelines running between the upper and lower levels. Appellant asserted that "there was a problem with the way [Elling] did the connections," and stated that the installation of the kitchen sink was "defective." Appellant further asserted that Elling's installation of the bathroom's piping was "defective." Appellant had become convinced that the installations were done in a "defective manner" after the Toledo Building Inspection Department made two inspections. Appellant also asserted that the same inspectors characterized the plumbing work as "defective."
 {¶ 7} Appellant then hired another plumber, Ken Anderson, to fix the problems. Anderson worked for two weeks, and accomplished "some" repairs. However, when his work was inspected, there were further problems. Appellant also characterized Anderson's work as "defective" and stated that he had received another "deficiency list" from the Toledo Building Inspection Department.
 {¶ 8} Appellant turned in a claim to Grange for the losses to his home which resulted from his employment of these contractors. Grange's claim adjuster, Jeffrey Travis, handled appellant's claim. Travis inspected appellant's home and appellant showed Travis the construction problems. At that time, not all of the construction problems had been repaired.
 {¶ 9} On October 25, 2002, appellant filed a complaint in the Lucas County Court of Common Pleas against Grange Mutual Insurance Company, Travis, Elling, Anderson, and two other contractors. As to Grange, appellant asserted claims for breach of contract for failure to pay a valid insurance claim and bad faith in denying his claim. As to Travis, appellant asserted a claim in negligence in his assessments of appellant's insurance claim and subsequent claim denial.
 {¶ 10} After some discovery, on April 29, 2004, Grange and Travis moved for summary judgment. The only evidence considered by the court for the motion was the Grange insurance policy and appellant's deposition. The trial court granted summary judgment in favor of both Grange and Travis, and all claims against them were dismissed with prejudice.
 {¶ 11} Appellant asserts the following assignments of error:
 {¶ 12} "I. The trial court committed reversible error in granting summary judgment on the issue of bad faith without providing a reason for its decision.
 {¶ 13} "II. The trial court committed reversible error in denying reconsideration to Appellant and reversing its ruling on the issue of bad faith inasmuch as the ruling limited the amount of discovery that Appellant was allowed to obtain from Appellee for the underlining [sic] claim.
 {¶ 14} "III. The trial court committed reversible error in ruling that Appellant's case can be distinguished from Zoppo v. Homestead Ins. Co.
(1994), 71 Ohio St.3d 552, 644 N.E.2d 397."
 {¶ 15} In his brief, appellant's arguments do not distinguish between his assignments of error and blur the distinctions between them. Essentially, appellant argues that summary judgment was improper because (1) the relevant policy language is ambiguous and requires interpretation; (2) that therefore Grange breached the insurance policy by failing to pay the claim; and (3) that Grange's failure to pay the claim was in bad faith. The first argument being dispositive of the rest, we may dispense with all of the assignments of error if appellant's first argument has no merit.
 {¶ 16} In reviewing a motion for summary judgment, an appellate court engages in a de novo review. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Thus, a reviewing court will find summary judgment to be proper when there is no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 17} Appellant argues that summary judgment was improperly granted on the breach of contract claim because the exclusionary language in the insurance policy is ambiguous and requires interpretation. Grange argues in response that the terms of the policy require no interpretation, and the plain meaning of the terms precludes coverage on appellant's claim. Grange denied appellant's claim on the basis that the loss was directly caused by an excluded event, namely, the faulty construction and renovation work done by workers whom appellant retained.
 {¶ 18} In Ohio, insurance contracts are construed as any other written contract. Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St. 3d 657, 665. An insurance policy will only require interpretation if the applicable language is ambiguous, that is, open to more than one interpretation. "Policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured." Butche v. Ohio Casualty Ins. Co. (1962), 174 Ohio St. 144, paragraph three of the syllabus. Whether an insurance policy is unambiguous or requires interpretation is a question of law. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St. 2d 241." Inland Refuse Transfer Co. v.Browning-Ferris Industries, Inc. (1984), 15 Ohio St. 3d 321, 322. Thus, whether an insurance policy requires interpretation is an issue properly disposed by summary judgment.
 {¶ 19} The relevant policy portions to which both appellant and Grange point contain the following language:
 {¶ 20} "Exclusions: Section 1:
 {¶ 21} "* * *
 {¶ 22} "Under Dwelling or Other Structures Coverage, we do not cover loss resulting directly from:
 {¶ 23} "* * *
 {¶ 24} "(7) faulty, inadequate or defective:
 {¶ 25} "(a) planning, zoning, development, surveying, siting;
 {¶ 26} "(b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
 {¶ 27} "(c) materials used in repair, construction, renovation or remodeling; or
 {¶ 28} "(d) maintenance."
 {¶ 29} "Where a policy of insurance prepared by an insurer provides generally for a certain coverage, exclusions from such coverage must be expressly provided for or must arise by necessary implication from the words used in the policy." Butche v. Ohio Casualty Ins. Co. (1962),174 Ohio St. 144, paragraph two of the syllabus. Common words in a written instrument evince their ordinary meaning unless manifest absurdity results or some other meaning is clearly intended by the instrument. Alexander v. Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. Grange argues that appellant's loss was directly caused by an expressly excluded cause, namely, defective workmanship in construction, repair and renovation. Appellant characterizes the cause of loss as the contractors' vandalism or theft of property, and argues that the policy covers losses incurred by this cause.
 {¶ 30} Alternatively, appellant argues that, assuming the loss-causing event was defective workmanship, construction or renovation, coverage still exists because the exclusionary language only excludes the listed events if they directly cause the loss, and the construction or renovation is only a concurrent or contributing cause together with the workers' "vandalism."
 {¶ 31} In support of his alternative argument, appellant urges this court to adopt the "concurrent causation" rule in interpreting insurance contracts. This doctrine has been developed primarily in California, and appellant cites Premier Ins. Co. v. Welch (1983), 140 Cal. App.3d 720, as an example.[1] That doctrine holds that a loss is covered if: (1) it is caused jointly by both an excluded peril and a non-excluded peril, and (2) the policy language only excludes perils that directly cause the loss. Applying the concurrent causation doctrine, appellant essentially makes the following argument: The insurance policy only excludes direct causes of loss with respect to "dwellings and other structures." Both the (alleged) "vandalism" of the contractors (a non-excluded peril) and the defective workmanship (an excluded peril), were joint (concurrent) causes of the loss. Since the excluded peril is not solely a direct cause, there is coverage for the loss.
 {¶ 32} The concurrent causation doctrine was considered recently in Ohio in Southside River-Rail Terminal Inc. v. Crum ForsterUnderwriters (2004), 157 Ohio App.3d 325, at paragraph two of the syllabus. In Southside, an insured company claimed that the collapse of its hazardous material storage tank was caused both by faulty workmanship in the tank's construction and the weight of the hazardous material. The policy expressly included coverage for loss by collapse due to defective workmanship or construction, but only while the construction was in progress. The policy also provided coverage for loss by collapse due to the weight of personal property. However, the tank collapse did not occur while construction was in progress. The insured company claimed that because two causes contributed to the loss, the concurrent causation doctrine should apply to provide coverage. That is, although the policy expressly excluded a cause of the loss (faulty workmanship), the concurrent causation doctrine should be applied where other, covered causes contributed to the loss (weight of personal property).
 {¶ 33} The court did not agree, finding the concurrent causation doctrine inapposite where the insurance policy expressly withheld coverage where an excluded risk event was the direct cause of the loss:
 {¶ 34} "Southside contends that other policy language in the `faulty workmanship' exclusion of Section (B)(3)(c)(2) provided a `concurrent cause' theory of recovery; that is, `where a policy expressly insures against direct loss and damage by one element but excludes loss or damage by another element, the coverage extends to the loss even though the excluded element is a contributory cause.' Gen. Am. Transp. Corp. v. SunIns. Office, Ltd. (C.A.6, 1966), 369 F.2d 906, 908. The concurrent-cause theory was inapposite to the case at bar where the form specifically provided that C F `will not pay for loss or damage caused by or resulting from * * * collapse, except as provided * * * in the Additional Coverage for Collapse.' See Tar, Deskman Baumann, Insurance Coverage for Collapse Claim: Evolving Standards and Legal Theories (1999), 35 Tort Ins. L.J. 57, 59. As coverage was provided only if a listed cause was the only cause of the collapse and not if an unlisted cause contributed to the collapse, the express language of the Deluxe form precluded coverage for a tank collapse caused by faulty welds and the weight of the tank contents. Therefore, Southside's and Reclaim's assignment of error is overruled, and we affirm that portion of the summary judgment from which Southside's and Reclaim's cross-appeals derive." Id at 157.
 {¶ 35} Here, the concurrent causation doctrine does not apply where there is no evidence that a covered peril, (alleged) vandalism or theft, contributed to the loss at all. Indeed, appellant's testimony characterizes the loss as the direct result of faulty workmanship during construction, renovation and repair. Appellant hired contractors to update electrical and plumbing systems, and make structural changes that included tearing out a floor, constructing a staircase, and constructing new bathroom walls. In deposition, appellant stated the contractors performed the work, but the installation was "defective" and "incorrect." Appellant admitted that no contractor whom he hired stole any property from him; he believes that one contractor "stole a lot of [his] money" because of the faulty workmanship. Appellant's loss is therefore included in the plain meaning of the words "faulty, inadequate or defective" "construction", "renovation", "repair" and "workmanship" — and for which, as direct causes of loss, the policy specifically excludes coverage. We need not decide whether the concurrent causation doctrine should be applied because appellant has advanced no proof of another cause operating concurrently to the defective workmanship, construction, etc. No interpretation is required because the policy language clearly and unambiguously excludes the direct causes of loss as described by appellant. Appellant's attempt to characterize selfdescribed defective, faulty and inadequate workmanship in the construction, renovation and repair of his home as "vandalism" and "theft" is specious, at best.
 {¶ 36} The evidence introduced in support of summary judgment consisted of the insurance policy and appellant's deposition testimony. No other evidence was introduced by appellant in opposition to summary judgment. However, this evidence is sufficient to find, as a matter of law, that the unambiguous policy terms precluded coverage for appellant's claimed loss.
 {¶ 37} Because Grange's insurance policy provides no coverage for appellant's loss and the claim was properly denied, appellant's arguments regarding the tort of bad faith are unfounded as well. There can be no claim for bad faith unless an insurance claim was wrongfully denied. "[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore." Zoppo etal. v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, 554, citing StaffBuilders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298, 303. Since appellant's claim of bad faith had no merit, the trial court was not obligated to explicate the reasons for its proper grant of summary judgment. Moreover, the trial court did not "distinguish" Zoppo — or mention it in its judgment — because to have done so would have been superfluous. Thus, each of appellant's assignments of error is not well-taken with respect to Grange.
 {¶ 38} With respect to Travis, Grange's claim adjuster, each of appellant's assignments of error is not well-taken. Appellant did not raise an assignment of error in relation to Travis, and appellant did not argue the merits of his claims against Travis separately in his brief. App.R. 12 permits an appellate court to disregard an assignment of error if the party raising it fails to argue the assignment separately in the brief as required by App.R. 16(A).
 {¶ 39} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant pursuant to App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Glasser, J. and Skow, J. concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Notably, this case was overturned by Garvey v. State Farm Fire Casualty (1989), 48 Cal. 3d 395.