OPINION
{¶ 1} The plaintiff-appellant, Kenneth E. Silvers, appeals the judgment of the Hancock County Court of Common Pleas granting summary judgment in favor of the defendant-appellee, Erie Insurance Group (hereinafter "Erie").
 {¶ 2} Prior to filing their motions for summary judgment, both parties stipulated to the following facts: Silvers owns and operates a lawn care company, Residential Lawn Care. In March 2002, Silvers, d/b/a Residential Lawn Care, purchased a FiveStar Contract Policy (hereinafter "Contractor Policy") with an endorsement for application of herbicides or pesticides from Erie. Moreover, Silvers, as an individual, purchased an Extracover Home Protector Policy (hereinafter "Home Protector Policy") from Erie, too.
 {¶ 3} Silvers was hired to provide lawn care and maintenance to two private lawns and the Marion Township Building. In the course of his business, Silvers inadvertently sprayed all three lawns with Round Up Pro, a non-selective herbicide. Silvers also inadvertently sprayed his own lawn with Round Up Pro. Silvers thought that he had sprayed Momentum, a selective weed control product. As a result, all lawns were damaged, and Silvers incurred the cost to repair them.
 {¶ 4} Silvers subsequently presented Erie claims under both the Home Protector Policy and the Contractor Policy for property damage to recover the costs he incurred by repairing the lawns. Erie denied all claims, so Silvers filed a complaint on May 14, 2003. Both parties moved for summary judgment, and on October 14, 2004, the trial court granted summary judgment in favor of Erie and denied summary judgment against Silvers. Silvers appeals alleging two assignments of error.
 First Assignment of Error The trial court erred by its determination that the accidentalapplication of a non-selective herbicide that caused entire sections oflawns to require repair was not an "occurrence" constituting damage toproperty within the coverage terms of the five star contractor policyincluding additional coverage for herbicide and pesticide applications.
 Standard of Review {¶ 5} The standard for review of a grant of summary judgment is one of de novo review. Lorain Nat'l Bank v. Saratoga Apts. (1989),61 Ohio St.3d 127, 129, 572 N.E.2d 198. Thus, such a grant will be affirmed only where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears . . . that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 6} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" CivR. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be rendered against him." Id.
 Insurance Coverage {¶ 7} The relevant language of the Contractor Policy states:
Section I — Coverages Coverage a bodily injury and property damageliability
 1. Insuring Agreement
 a. We will pay those sums that the insured becomes legally obligated topay as damages because of "bodily injury" or "property damage" to whichthis insurance applies. * * *
b. This insurance applies to "bodily injury" and "property damage" onlyif:
 1) The "bodily injury" or "property damage" is caused by an"occurrence" that takes place in the "coverage territory:
 2) The "bodily injury" or "property damage" occurs during the policyperiod; and
 3) Prior to the policy period, no insured listed . . . knew that"bodily injury" or "property damage" had occurred in whole or in part.
Contractor Policy at p. 1. An "`[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 11.
 {¶ 8} Moreover, the Contractor Policy defines the following exclusions.
2. Exclusions
 This insurance does not apply to: * * *
j. Damage to Property "Property damage" to:
 1) Property you own, rent, or occupy . . . * * *
5) That particular part of real property on which you work or anycontractors or subcontractors working directly or indirectly on youbehalf are performing operations, if the "property damage" arises out ofthose operations; or
 6) That particular part of any property that must be restored, repairedor replaced because "your work" was incorrectly performed on it.
Id. at 4. The insurance policy defines "your work" as the following.
22. "Your work":
 a. Means:
 1) Work or operations performed by you or on your behalf; and
 2) Materials parts or equipment furnished in connection with such workor operations.
Id. at 12.
 {¶ 9} On the other hand, the relevant portions of the Home Protector Policy states:
Property damage liability coverage our promise
 We will pay all sums up to the amount shown on the Declarations whichanyone we protect becomes legally obligated to pay as damages because ofbodily injury or property damage caused by an occurrence during thepolicy period. We will pay for only bodily injury or property damagecovered by this policy.
 We do not cover . . . 11. Bodily injury, property damage or personalinjury which arises out of the discharge, disposal, release or escape ofany solid, liquid, or gaseous or thermal irritant, pollutant orcontaminant, including . . . chemicals. . . .
Home Protector Policy at 17, 19.
 {¶ 10} Because the facts of this case are stipulated by both parties, we must determine whether the inadvertent application of the non-selective herbicide is covered by either insurance policy. Silvers contends that the inadvertent herbicide application to his and his customer's lawns was an "occurrence" within the definition stated in the insurance policies. Moreover, Silvers argues that the Pesticide and Herbicide Applicator Coverage extends the basic policy coverage to include the inadvertent herbicide application. Contrarily, Erie argues that under the Contractor Policy, the "your work" exclusions prevents coverage in this particular context. Furthermore, Erie suggests that there was no "occurrence" as defined in either the Contractor Policy or the Home Protector Policy in order for Silvers to receive coverage.
 {¶ 11} The Ohio Supreme Court has held that "insurance contracts must be construed in accordance with the same rules as other written contracts." Hybud Equipment Corp. v. Sphere Drake Ins. Co. (1992),64 Ohio St.3d 657, 665, 597 N.E.2d 1096. In doing so, the Court stated:
In applying these rules, we have stated that the most critical rule isthat which stops this court from rewriting the contract when the intentof the parties is evident, i.e., if the language of the policy'sprovisions is clear and unambiguous, this court may not resort toconstruction of that language.
 Thus, in reviewing an insurance policy, words and phrases used thereinmust be given their natural and commonly accepted meaning, where they infact possess such meaning, to the end that a reasonable interpretation ofthe insurance contract consistent with the apparent object and plainintent of the parties may be determined.
 In reaching its decision, [a federal district] court aptly noted thatunder the case law of this state, an exclusion in an insurance policywill be interpreted as applying only to that which is clearly intended tobe excluded. However, the rule of strict construction does not permit acourt to change the obvious intent of a provision just to imposecoverage.
Id. (internal quotations and citations omitted).
 {¶ 12} In the instant case, the Contractor Policy states that Silvers is entitled to coverage if (1) the property damage is caused by an occurrence that takes place in the coverage area; and (2) the property damage occurred during the policy period. Without discussing whether the inadvertent application of the non-selective herbicide is an "occurrence," the record indicates that the property damage did occur during the policy period. Nevertheless, despite possibly meeting the criteria necessary for coverage, the Contractor Policy does state explicit exclusions that prevent coverage. Specifically, the Contractor Policy excludes coverage for property damage "that must be restored, repaired or replaced because `your work' was incorrectly performed on it." The policy defines "your work" as "[w]ork or operations performed by you. . . ."
 {¶ 13} According to the joint stipulation of facts, Silvers admittedly applied the non-selective herbicide to his and his customer's lawns, which would constitute "your work" under the Contractor Policy. Moreover, according to the exclusion, any repair, restoration, or replacement of any lawn, which is a result of Silvers' work, falls within the exclusion outlined in the policy. In sum, Silvers' application of non-selective herbicide to his and his customer's lawns is within the clear and unambiguous exclusion as detailed in the Contractor Policy. Finally, while the Herbicide and Pesticide Endorsement does eliminate an exclusion primarily dealing with herbicides and pesticides, the Endorsement does not alter, change, or eliminate the "your work" exclusion that prevents Silvers from coverage given this particular set of facts.
 {¶ 14} After reviewing the Home Protector Policy, we similarly conclude that Silvers' claim was properly denied. The Home Protector Policy states that Erie will pay "all sums up to the amount shown on the Declarations which anyone we protect becomes legally obligated to pay as damages because of . . . property damage caused by an occurrence during the policy period." Home Protector Policy at 17 (emphasis not included). Under the exclusions, however, the policy states "[w]e do not cover . . . property damage . . . which arises out of the discharge, disposal, release or escape of any solid, liquid, gaseous or thermal irritant, pollutant, or contaminant, including . . . chemicals. . . ." Id. at 17, 19 (emphasis not included). Thus, according to this language, the inadvertent discharge of a non-selective herbicide is not included under the property damage section of the Home Protector Policy. Therefore, Silvers is barred from recovering insurance proceeds from Erie under this policy.
 {¶ 15} According to the exclusionary language highlighted in both the Contractor Policy and the Home Protector Policy, Silvers' actions of inadvertently spraying the lawns with a non-selective herbicide bars recovery of insurance proceeds as a matter of law. Thus, his first assignment of error is overruled.
 Second Assignment of Error The trial court erred in its determination that the failure of theinsurer to pay claims on covered occurrences and property damages throughdenial of coverage is a valid basis for bad faith claims against theinsurer.
 {¶ 16} Based on our foregoing conclusion in the first assignment of error, no bad faith can exist because he was not entitled to insurance coverage under Contractor Policy or the Home Protector Policy. SeeBoughan v. Nationwide Property Cas. Co., 3rd Dist. No. 1-04-57, 2005-Ohio-244, at ¶ 19. Accordingly, the second assignment of error is overruled.
Judgment Affirmed.
 Cupp, P.J. and Rogers, J., concur.