DECISION AND JUDGMENT ENTRY *Page 2 
{¶ 1} Appellant, I.G.H. II, Inc., d/b/a TruGreen-Chemlawn ("TruGreen"), appeals the August 1, 2006 judgment of the Wood County Court of Common Pleas on the cross-motions for summary judgment in a declaratory judgment action on insurance coverage filed by TruGreen against appellee, Selective Insurance Company of South Carolina ("Selective").[1] For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The events leading up to the insurance claim are not in dispute. In December 2001, TruGreen purchased a comprehensive general liability ("CGL") policy from Selective through their insurance agent, Michael Spilis, and his employer/broker Picton Cavanaugh, Inc., d/b/a Sky Insurance. The policy excluded pollution coverage and contained the standard business risk exclusions. In December 2002, TruGreen renewed its policy. On January 7, 2003, Selective notified Spilis that TruGreen must purchase herbicide/pesticide coverage in order to renew the policy for 2004-2005. Between May 8 and May 19, 2003, TruGreen's employee mistakenly applied a non-selective herbicide to approximately 70 customer lawns, causing damage to the customers' lawns and killing the entire lawn in some instances. TruGreen incurred expenses exceeding $170,000 in repairing and replacing the damaged lawns. *Page 3 
 {¶ 3} On or about May 28, 2003, pursuant to the CGL policy, TruGreen submitted a notice of occurrence claim form to Sky Insurance. On June 2, 2003, Selective notified TruGreen of its receipt of the claim and that it was in the process of investigating the claim. On July 16, 2003, Selective denied the claim, citing the pollution and business risk exclusions in the policy. Selective claimed that the herbicide used to kill the grass was a pollutant as defined in the pollution exclusion of the policy. Furthermore, Selective asserted that TruGreen's faulty workmanship and negligence caused the damage, so the business risk exclusions barred coverage.
 {¶ 4} On June 23, 2005, TruGreen filed its complaint, alleging negligence against Spilis and requesting declaratory judgment regarding the Selective policy coverage. On April 26, 2006, after discovery was complete, Selective filed a motion for summary judgment; TruGreen filed a cross-motion for summary judgment.
 {¶ 5} In its August 1, 2006 judgment entry, the trial court granted Selective's motion for summary judgment finding that the CGL policy did not extend coverage based on the policy's pollution and business risk exclusions. The trial court denied TruGreen's motion for summary judgment and declared that the insurance policy "excludes claims for damages caused by the dispersal of the Razor herbicide." The court then dismissed TruGreen's claim against Selective. TruGreen now challenges that decision through the following assignments of error: *Page 4 
 {¶ 6} "I. The trial court committed reversible error in granting summary judgment in favor of Selective because the business risk exclusions in the Selective policy were overridden by the products-completed operations coverage.
 {¶ 7} "II. The trial court committed reversible error in granting summary judgment in favor of Selective because the pollution exclusions in the Selective policy are unenforceable against Chemlawn where the application of the liquid fertilizer and herbicide mix did not involve the `dispersal' of a `pollutant.'
 {¶ 8} "III. The trial court committed reversible error in not granting summary judgment in favor of plaintiff I.G.H. II, Inc., since there are no genuine issues of material fact and products-completed operations coverage is afforded to I.G.H. II, Inc., under the terms of the Selective policy."
 {¶ 9} A lower court's grant of summary judgment is reviewed de novo, or "without deference to the trial court's determination." Brown v.Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is appropriate, pursuant to Civ. R. 56(C), where "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." (Citations omitted.) Turner v. Turner (1993),67 Ohio St.3d 337, 339-340, 1993-Ohio-176. *Page 5 
 {¶ 10} At issue, here, is whether the insurance policy exclusions barred coverage for TruGreen's claim. "In Ohio, insurance contracts are construed as any other written contract." Andray v. Elling, 6th Dist. No. L-04-1150, 2005-Ohio-1026, ¶ 18, citing Hybud Equip. Corp. v. SphereDrake Ins. Co., Ltd. (1992), 64 Ohio St. 3d 657, 665. If the language of the policy is clear and unambiguous, there are no issues of fact and interpretation is a matter of law. Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, citing Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241.
 {¶ 11} On the other hand, policies that are "reasonably susceptible of more than one interpretation, * * * will be construed strictly against the insurer and liberally in favor of the insured." (Citations omitted.)Lane v. Grange Mut. Cos. (1989), 45 Ohio St.3d 63, 65. Whether the policy was clear and unambiguous or required interpretation, therefore, was a proper issue for summary judgment.
 {¶ 12} In the first assignment of error, TruGreen claims the trial court erred in finding that the policy clearly and unambiguously excluded coverage based on the business risk exclusions, alleging the products-completed operations ("PCO") coverage overrode those business risk exclusions. The insurance policy business risk exclusions are as follows:
 {¶ 13} "2. Exclusions. This insurance does not apply to:
 {¶ 14} "* * *
 {¶ 15} "j. Damage to Property *Page 6 
 {¶ 16} "* * *
 {¶ 17} "(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the `property damage' arises out of those operations; or
 {¶ 18} "(6) That particular part of any property that must be restored, repaired or replaced because `your work' was incorrectly performed on it. * * *"
 {¶ 19} Pursuant to the policy, "your work" means:
 {¶ 20} "a. Work or operations performed by you or on your behalf; and
 {¶ 21} "b. Materials, parts or equipment furnished in connection with such work or operations."
 {¶ 22} The policy, however, provides an exception to the exclusion in 2(j)(6). The policy states: "Paragraph (6) of this exclusion does not apply to `property damage' included in the `products-completed operations hazard.'"
 {¶ 23} The policy loosely defines "products-completed operations hazard" as follows:
 {¶ 24} "a. Includes all `bodily injury' and `property damage' occurring away from premises you own or rent and arising out of `your product' or `your work' except:
 {¶ 25} "(1) Products that are still in your physical possession; or
 {¶ 26} "(2) Work that has not yet been completed or abandoned."
 {¶ 27} In general, business risk exclusions bar claims by an insured, which arise from the insured's own negligence. See Erie Ins. Exchange v.Colony Dev. Corp. (1999), *Page 7 136 Ohio App.3d 406, 415-416. These exclusions are standard, since "replacement or repair of faulty * * * workmanship" is part of the risk of doing business, and not a liability which an insurer intends to cover. LISN, Inc. v. Commercial Union Ins. Cos. (1992),83 Ohio App.3d 625, 630, citing Weedo v. Stone-E-Brick (1979), 405 A.2d. 788, 790-791.
 {¶ 28} The facts and policy language in this case are similar to those in Silvers v. Erie Ins. Group, 3d Dist. No. 5-04-54, 2005-Ohio-2504. InSilvers, the plaintiff mistakenly applied a nonselective herbicide to his customer's lawn, damaging the grass. Id., ¶ 3. Silvers filed an insurance claim to recover the expense of repairing the customer's lawn, claiming his action was an occurrence covered by the policy. Id., ¶ 4. The Third District Court of Appeals, interpreting nearly identical policy language, did find the action was an occurrence as defined in the policy. Id., ¶ 12. Nevertheless, the business risk exclusions precluded coverage for property damage resulting from Silver's faulty workmanship. Id.
 {¶ 29} TruGreen, while admitting the application of Razor was due to employee error, claims that the PCO exception to the business risk exclusions applies in this case. TruGreen argues that its work was complete before the damage occurred to the lawns. However, PCO coverage will not apply to damage TruGreen has caused to its own work. SeeHahn's Elec. Co. v. Cochran, 10th Dist. Nos. 01AP-1391, 01AP-1394, 2002-Ohio-5009, ¶ 38 ("The exclusions generally operate to exclude coverage for damage to the *Page 8 
work of the insured, but generally do not exclude coverage for collateral damage to other property.")
 {¶ 30} In claiming coverage under the PCO exception, TruGreen must demonstrate that property damage arose out of work that was no longer in its possession or arose out of work that was complete. The PCO language in the Selective policy is similar to language considered by other courts, which interpret the language "arising out of to provide coverage for negligent performance that leads to other property damage, but not the negligent performance itself. See Camp Frederick, Inc. v. D GEnterprises, Inc. (Dec. 10, 1999), 7th Dist. No. 98 CO 77, citingWestfield Ins. v. Riehle (1996), 113 Ohio App.3d 249, 255 (PCO coverage applies to tort liability arising from the negligent work, and not "contractual liability" of an insured who "fails to produce work which is satisfactory to the customer.")
 {¶ 31} In this case, TruGreen damaged customer lawns, when their work involved promoting green, weed-free lawns. This damage occurred in the course of the TruGreen employee's work, when the employee erroneously applied a non-selective herbicide to the lawns. TruGreen argues that because the grass did not immediately die, the damage occurred after completion of their work. We disagree. Although the grass did not instantly die, the grass could not recover from the TruGreen employee's application of Razor.
 {¶ 32} TruGreen damaged its own work through faulty workmanship. TruGreen proposes no other event, occurring after its employee's action, which caused property *Page 9 
damage that would fall within the PCO exception. Accordingly, the business risk exclusions apply in this case. TruGreen's first assignment of error, claiming the PCO coverage overrode the business risk exclusions, is not well-taken.
 {¶ 33} Although a finding that the business risk exclusions, alone, acts to bar coverage, the trial court also concluded that the pollution exclusions in the Selective policy barred coverage. Thus, we too, will address TruGreen's second assignment of error which raises the question of whether the pollution exclusions barred coverage under the facts of this case.
 {¶ 34} The Selective policy contains two pollution exclusion endorsements. The Pollution Exclusion (Limited Form) language provides, in relevant part:
 {¶ 35} "We shall have no obligation under this coverage part:
 {¶ 36} "a. to investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which:
 {¶ 37} "1. arises out of the `pollution hazard; ` or
 {¶ 38} "2. would not have occurred but for the `pollution hazard; ` or
 {¶ 39} "b. to pay any damages, judgments, settlements, losses, costs or expenses of any kind or nature that may be awarded or incurred by reason of any such claim or suit or any such actual or threatened injury or damage; or
 {¶ 40} "c. for any losses, costs or expenses arising out of any obligation, order, direction or request of or upon any insured or others, including but not limited to any *Page 10 
governmental obligation, order, direction or request, to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, in any way respond to, or assess the effects of `pollutants.'
 {¶ 41} "`Pollutants' means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste (including materials to be recycled, reconditioned, or reclaimed). `Pollutants' also include those products or materials which are irritants or contaminants and which are used, produced, manufactured or sold in, at, or for your business, operations, premises, site or location, such as (but not limited to) gasoline, fuels, lubricants and other operating fluids or machinery, paints, cleaning agents, herbicides or pesticides.
 {¶ 42} "`Pollution hazard' means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any `pollutants' arising out of the discharge, dispersal, seepage, migration, release or escape of such `pollutants.' But `pollution hazard' does not include injury or damage arising out of heat, smoke or fumes from a `hostile fire.'"
 {¶ 43} As set forth above, when interpreting an insurance policy, as with any written contract, common words and terms shall be given their plain and ordinary meaning. Here, "herbicide" is clearly enumerated as a "pollutant." However, the parties dispute whether the application of Razor was a "dispersal" as set forth in the exclusion. The common definition of the term "disperse" is "to spread widely; disseminate." *Page 11 
Random House Webster's Unabridged Dictionary (2 Ed. 2001) 568. Clearly, TruGreen's application of Razor was a dispersal.
 {¶ 44} Based on the foregoing, we find that the pollution exclusions were not ambiguous and precluded coverage for the damages caused by the misapplication of Razor.
 {¶ 45} Alternatively, even if we determined that the pollution exclusions are ambiguous and considered parol evidence regarding coverage, we would still reach the same result. In Andersen v. HighlandHouse Co., 93 Ohio St.3d 547, 2001-Ohio-1607, the Supreme Court of Ohio determined that where in a CGL policy a pollution exclusion did not specifically exclude residential carbon monoxide poisoning, and where, based on the facts of the case, the insured reasonably believed that the policy did not exclude such claims, the insurer was required to defend and indemnify the insured.
 {¶ 46} In Andersen, the court first determined that the pollution exclusion was ambiguous because carbon monoxide was not specifically listed. Next, the court examined the historical purpose of the pollution exclusion and determined that it was reasonable for the insureds to believe that the policy did not exclude claims for injuries resulting from carbon monoxide leaks. Id. at 550. The court also noted the importance of construing ambiguities in favor of the insured. Id. at 551. Further, although it declined to determine the merits of the reasonable-expectations doctrine, the court noted that it could apply to the case. Id. *Page 12 
 {¶ 47} As set forth above, unlike Andersen, the pollution exclusions at bar specifically excluded herbicides. We further find that TruGreen did not or should not have had a reasonable expectation of pollution coverage. During his deposition, Michael Spilis, TruGreen's insurance agent, testified that that in 2002, he specifically informed TruGreen (through franchise owner Terrence Korczyk) that the Selective policy would not contain pollution coverage; specifically, liability coverage for TruGreen's chemical applications. According to Spilis's deposition, Korczyk did not appear concerned about the lack of coverage. According to Terrence Korczyk's deposition, in 2003, prior to the incident, TruGreen was in the process of obtaining a pesticide/herbicide policy from another insurer in order to comply with the Ohio Department of Agriculture.
 {¶ 48} Based on the foregoing, we find that TruGreen's second assignment of error is not well-taken. Furthermore, we find that we need not address TruGreen's third assignment of error separately, as it merely states the inverse of the first assignment of error. Accordingly, TruGreen's third assignment of error is not well-taken.
 {¶ 49} On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
 JUDGMENT AFFIRMED. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J. concur.
[1] The motions for summary judgment did not address the negligence claim filed by appellant against Michael Spilis and Picton Cavanaugh, Inc. Spilis and Picton Cavanaugh filed an amicus curie brief in support of appellant in this appeal. Although the trial court's August 1, 2006 judgment did not dispose of all the claims, the court included the necessary Civ. R. 54(B) language. *Page 1