[Cite as *Frank v. Westfield Natl. Ins. Co.*, 2017-Ohio-1026.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| LISA FRANK | C.A. No.    27925 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| WESTFIELD NATIONAL INSURANCE<br>COMPANY | COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO<br>CASE No.    CV 2014-08-3770 |
| Appellee | |

DECISION AND JOURNAL ENTRY

Dated: March 22, 2017

CARR, Presiding Judge.

{¶1}   Appellant Lisa Frank appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}   On August 18, 2012, Ms. Frank's mother was a passenger in a vehicle being driven by Ms. Frank's mother's sister ("Ms. Frank's aunt").  Ms. Frank's aunt lost control of the vehicle and struck a guard rail.  As a result of the collision, Ms. Frank's mother suffered significant injuries and was life-flighted from the scene.  Several days later, on August 27, 2012, Ms. Frank's mother passed away.  Ms. Frank was not in the vehicle at the time of the accident and did not witness the accident.  Thus, Ms. Frank did not suffer any physical injuries as a result of the accident.

{¶3}   Ms. Frank's aunt's insurance carrier offered their $250,000 per person limit of coverage under Ms. Frank's aunt's policy to compensate Ms. Frank's mother's estate.

Thereafter, Ms. Frank filed a claim with her own insurance company, Appellee Westfield National Insurance Company ("Westfield"), under her policy, which included uninsured/underinsured motorist ("UIM") coverage. That policy provided for a $300,000 policy limit for UIM coverage. Westfield denied the claim asserting that Ms. Frank had not sustained a bodily injury caused by the accident and arising out of the ownership, maintenance, or use of an underinsured motor vehicle.

{¶4} In August 2014, Ms. Frank filed a complaint against Westfield seeking declaratory judgment, coverage, and damages. Ms. Frank alleged that the Westfield UIM policy provided her with coverage. Specifically, she maintained that she was presumed to be damaged by the wrongful death of her mother and that those compensatory damages included the loss of services of her mother. *See* R.C. 2125.02(B)(2). She alleged that the policy's definition of bodily injury included loss of services, and, thus, she was entitled to recover from Westfield. The complaint was thereafter amended, after which Westfield filed an answer and counterclaim for declaratory judgment. Westfield sought a declaration that Ms. Frank was not entitled to coverage under the UIM policy for the damages Ms. Frank sustained as the result of the death of her mother.

{¶5} The parties filed joint stipulations concerning much of the factual background, and both sides filed competing motions for summary judgment. Following briefing, the trial court found in favor of Westfield and concluded that "Westfield owe[d] no duty to [Ms. Frank] and no [UIM] coverage exist[ed] under Westfield's policy of insurance issued to [Ms. Frank] with respect to the injuries or damages sustained by [Ms. Frank] arising out of the death of her mother from the August 18, 2012 accident."

{¶6} Ms. Frank has appealed, raising a single assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO WESTFIELD AND ALSO ERRED IN DENYING MS. FRANK'S MOTION FOR SUMMARY JUDGMENT BY HOLDING THAT MS. FRANK IS NOT ENTITLED TO UNDERINSURED MOTORIST COVERAGE UNDER HER POLICY FOR THE STATUTORILY PRESUMED LOSS OF SERVICES MS. FRANK SUSTAINED AS A RESULT OF THE DEATH OF HER MOTHER IN A COLLISION CAUSED BY AN UNDERINSURED MOTORIST.

{¶7}   In her sole assignment of error, Ms. Frank argues that the trial court erred in granting summary judgment to Westfield and in denying her motion for summary judgment. We do not agree.

{¶8}   This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe–Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶9}   Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶10}   The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the

record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶11} "'An insurance policy is a contract whose interpretation is a matter of law.'" *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, ¶ 10, quoting *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6. "[O]ur task when interpreting an insurance policy is to examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." (Internal quotations omitted.) *World Harvest Church v. Grange Mut. Cas. Co.*, Slip Opinion No. 2016-Ohio-2913, ¶ 28, quoting *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, ¶ 17, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "'Moreover, "[w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy."'" *World Harvest Church* at ¶ 28, quoting *White* at ¶ 17, quoting *Galatis* at ¶ 11.

{¶12} "When determining whether a provision of an insurance contract is ambiguous, Courts must examine the contract as a whole and pay careful attention to context." *Chapman v. Am. Family Ins.*, 9th Dist. Summit No. 27862, 2016-Ohio-5906, ¶ 6. "'[A] court cannot create ambiguity in a contract where there is none.'" *Sauer* at ¶ 12, quoting *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 16. "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Sauer* at ¶ 12, quoting *Lager* at ¶ 16.

"[I]f provisions are susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." (Internal quotations and citations omitted.) *Sauer* at ¶ 11.

{¶13} Ms. Frank's Westfield policy included homeowner's coverage and automobile coverage, in addition to UIM coverage. The relevant portion provides as follows:

> We will pay compensatory damages which an ***insured*** is legally entitled to recover from the owner or operator of an ***underinsured motor vehicle*** because of ***bodily injury***:
>
> A. Sustained by an ***insured***; and
>
> B. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership maintenance or use of the ***underinsured motor vehicle***.

(Emphasis in original). The words and phrases in bold italics are all defined terms in the policy. The general definitions section states that bodily injury "means bodily harm, sickness or disease, including required care, loss of services and death that results."

{¶14} Ms. Frank noted that she was statutorily presumed to have suffered damages, including a loss of services, as a result of the wrongful death of her mother. *See* R.C. 2125.02(B)(2). Thus, she argued that she was an insured who was legally entitled to recover damages from Ms. Frank's aunt, who was the owner/operator of an underinsured motor vehicle. She further asserted that, pursuant to the definition of bodily injury in the Westfield policy, the loss of services of her mother constituted a bodily injury that she sustained as a result of the accident.

{¶15} From the arguments below, it appears that the parties only disputed whether Ms. Frank sustained a "bodily injury" as contemplated by the policy. In the trial court, Ms. Frank argued that, because Westfield opted to include "loss of services" within its definition of "bodily

injury[,]" and thereby mirrored language in the wrongful death statute, Ms. Frank did sustain a bodily injury caused by the accident. She further argued that the use of the word "including" in the definition indicated an intent to expand the definition. Moreover, she asserted that, even if "including" could be read as a limiting term, the term would then be ambiguous and must be construed in her favor.

{¶16} Westfield argued that the words "including" and "that results" all had to be considered in determining whether Ms. Frank sustained "bodily injury[.]" Westfield maintained that when the entire phrase, "including required care, loss of services and death that results[,]" is considered along with the rest of the definition, it is clear that required care, loss of services, and death are only covered when they result from "bodily harm, sickness or disease" and are sustained by an "insured[.]" In response, Ms. Frank asserted in a conclusive manner that the language "that results" only applied to the immediately preceding word, "death[.]"

{¶17} We agree with Ms. Frank that Westfield's definition of "bodily injury" is not the model of clarity. Pursuant to the policy, "'[b]odily injury' means bodily harm, sickness or disease, including required care, loss of services and death that results." In order to view "including" as expanding the meaning of bodily injury to encompass "loss of services" as its own category of "bodily injury[,]" we would need to ignore the fact that the definition ends with the phrase "that results." While Ms. Frank conclusively asserts that "that results" only applies to death, given the context, it is only reasonable to conclude that "that results" modifies "required care, loss of services and death[.]" *See Wohl v. Swinney,* 118 Ohio St.3d 277, 2008-Ohio-2334, ¶ 12-13 (noting that the rule of construction that referential and qualifying words and phrases refer solely to the last antecedent only applies when no contrary intention otherwise appears). The question that then must be answered is, "required care, loss of services and death that results"

from what? Westfield's policy does not expressly answer that question; however, it can only reasonably relate back to something else in the definition. In light of the manner in which clauses are used in the definition, the only reasonable interpretation is that, in order to constitute a "bodily injury[,]" "required care, loss of services, and death" must result from "bodily harm, sickness or disease[.]" Thus, we agree with that portion of the trial court's analysis.

{¶18} Having concluded that the definition of "bodily injury" requires that "required care, loss of services, and death" must result from "bodily harm, sickness or disease" in order to constitute "bodily injury[,]" we next consider whether UIM coverage exists under the policy. That section provides that:

> We will pay compensatory damages which an ***insured*** is legally entitled to recover from the owner or operator of an ***underinsured motor vehicle*** because of ***bodily injury***:
>
> A. Sustained by an ***insured***; and
>
> B. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership maintenance or use of the ***underinsured motor vehicle.***

(Emphasis in original.) Ms. Frank's mother, who did sustain "bodily injury[,]" is not an "insured" under the Policy, while Ms. Frank, who is an "insured[,]" did not sustain "bodily injury[.]" Ms. Frank's loss of services did not result from any "bodily harm, sickness or disease" she suffered. We remain mindful of the Supreme Court's admonition that we must "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy."'" *World Harvest Church*, Slip Opinion No. 2016-Ohio-2913, at ¶ 28, quoting *White*, 2009-Ohio-3718, at ¶ 17, quoting *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11. The policy as a whole denotes an intent to limit recovery under the UIM provision to "bodily injury" sustained by an insured. Construing the policy to allow Ms. Frank's loss of

services, which resulted from a non-insured's (her mother's) bodily harm, to constitute a "bodily injury" would be contradictory to the clear intent of the provision. Accordingly, the trial court did not err in awarding summary judgment to Westfield and declaring that it did not have a duty to provide Ms. Frank coverage under the circumstances before us.

{¶19} Ms. Frank's assignment of error is overruled.

## III.

{¶20} Ms. Frank's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

MATTHEW L. RIZZI, JR., Attorney at Law, for Appellant.

DAVID G. UTLEY, Attorney at Law, for Appellee.