[Cite as *Miller v. Troyer*, 2018-Ohio-3419.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

JODY MILLER

    Appellant

    v.

ELI TROYER, et al.

    Appellee

C.A. No.     17AP0018

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2016 CVC-C 000458

DECISION AND JOURNAL ENTRY

Dated: August 27, 2018

CARR, Judge.

{¶1} Plaintiff-Appellant Jody Miller, individually, and as executrix of the estate of Matthew E. Miller ("the Estate"), appeals the judgment of the Wayne County Court of Common Pleas. This Court reverses and remands the matter for further proceedings consistent with this opinion.

I.

{¶2} On July 28, 2015, decedent, Mr. Miller was operating a motorcycle northbound on Prairie Lane in Wooster. His wife, Jody Miller, was a passenger. At the time, Defendant Eli Troyer was traveling southbound on the same road operating a horse-drawn buggy. The horse-drawn buggy veered left of center and struck the motorcycle, resulting in Mr. Miller's death and causing Mrs. Miller injury. The Estate filed a claim with its insurance company, Defendant-Appellee Westfield National Insurance Company ("Westfield"). While Westfield paid the Estate

certain benefits under the policy, it denied the Estate's claim for uninsured/underinsured motorists coverage.

{¶3} In November 2015, the Estate filed a complaint against Eli Troyer and Westfield. With respect to Eli Troyer, the Estate alleged that Eli Troyer negligently operated the horse-drawn buggy and asserted claims for wrongful death/negligence, survivorship, and negligence. In addition, the Estate filed a claim seeking declaratory judgment against Westfield. The Estate argued that Mr. and Mrs. Miller qualified as insureds under a policy underwritten by Westfield and that such policy provided uninsured/underinsured motorists coverage. The Estate further alleged that Eli Troyer may be an uninsured/underinsured motorist and that the Estate was entitled to recover under the policy. Finally, the Estate requested a declaration that the provisions Westfield relied on to deny the Estate benefits under the policy be found "void and invalid and unconscionable or violative of Ohio law and/or public policy."

{¶4} Westfield answered the complaint and filed a counterclaim against the Estate and a crossclaim against Eli Troyer. Westfield asserted it was entitled to a declaration that the Estate was not owed uninsured/underinsured motorist coverage because the horse-drawn buggy did not meet the definition of an uninsured or underinsured motor vehicle in the policy. With respect to Eli Troyer, Westfield maintained that it was entitled to recover the payments it had made to the Estate as a result of the accident caused by Eli Troyer's negligence.

{¶5} After receiving leave, the Estate filed an amended complaint adding Enos Troyer, the father of Eli Troyer and the owner of the horse and buggy, as a defendant. The amended complaint included claims of negligent entrustment and negligence/liability of owner of domestic animal against Enos Troyer.

{¶6}    Thereafter, Westfield filed a motion for judgment on the pleadings, or, in the alternative, motion for summary judgment, on the Estate's claim against it and on its counterclaim. Westfield argued that, based upon the definitions of motor vehicle and trailer in the general provisions section of the policy, the horse-drawn buggy did not qualify as an uninsured/underinsured motor vehicle under the policy and therefore the Estate was not entitled to coverage under the uninsured/underinsured motorists coverage section of the policy.

{¶7}    The Estate filed a motion in opposition and a cross-motion for summary judgment on the Estate's claim. In support of its motion, the Estate filed the deposition of a representative of Westfield. The Estate maintained that the horse-drawn buggy qualified as an uninsured motor vehicle based upon the definitions of motor vehicle and trailer provided in the policy, which the Estate argued were ambiguous. The Estate also asserted that the policy included multiple definitions of the word "trailer[.]"

{¶8}    Westfield replied arguing that, even if the policy was ambiguous, no reasonable construction of the terms would allow for the conclusion that a horse-drawn buggy qualified as either a motor vehicle or trailer as those terms were defined in the general provisions section of the policy.

{¶9}    The trial court granted summary judgment to Westfield concluding that the policy covered only uninsured motor vehicles and that the horse-drawn buggy did not meet the definition of motor vehicle. Additionally, the trial court concluded that the insurance policy did not violate public policy. Subsequently, the trial court issued an entry adding Civ.R. 54(B) language to its judgment.

{¶10}   The Estate appealed; however, this Court dismissed the appeal for lack of a final appealable order. The trial court entered judgment again, this time additionally finding that the

insurance policy was not void as unconscionable or violative of Ohio law. The Estate again appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY GRANTING APPELLEE WESTFIELD NATIONAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT.

{¶11} In its sole assignment of error, the Estate argues that the trial court erred in granting Westfield's motion for summary judgment. Because we conclude that the parties and the trial court failed to consider certain policy language in determining whether coverage is warranted, we remand that matter to the trial court so that the issue can be briefed by the parties and considered by the trial court.

{¶12} "An insurance policy is a contract whose interpretation is a matter of law. [O]ur task when interpreting an insurance policy is to examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. Moreover, [w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." (Internal quotations and citations omitted.) *Frank v. Westfield Natl. Ins. Co.*, 9th Dist. Summit No. 27925, 2017-Ohio-1026, ¶ 11. "When determining whether a provision of an insurance contract is ambiguous, Courts must examine the contract as a whole and pay careful attention to context. [A] court cannot create ambiguity in a contract where there is none. Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation. [I]f provisions are susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." (Internal quotations and citations omitted.) *Id.* at ¶ 12.

{¶13} With respect to uninsured motorists coverage, the policy at issue provides in relevant part:

We will pay compensatory damages which an *insured* is legally entitled to recover from the owner or operator of:

**A**. An *uninsured motor vehicle* as defined in Section **A.**, **C**. and **D**. of the definition of *uninsured motor vehicle* because of *bodily injury*:

**1**. Sustained by an *insured*; and

**2**. Caused by an accident.

(Emphasis in original.)

{¶14} The uninsured/underinsured endorsement defines uninsured motor vehicle in relevant part:

"*Uninsured motor vehicle*" means a land motor vehicle or trailer of any type:

**A**. To which no bodily injury liability bond or policy applies at the time of the accident.

\* \* \*

**C**. To which a bodily injury liability bond or policy applies at the time of the accident. In this case, its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of Ohio.

**D**. To which a bodily injury bond or policy applies at the time of the accident but the bonding or insuring company:

**1**. Denies coverage; or

**2**. Is or becomes insolvent.

(Emphasis in original.)

{¶15} The argument below, and on appeal, ultimately centered on whether the horse-drawn buggy was an uninsured motor vehicle,[1] i.e. whether it was "a land motor vehicle or trailer

---

[1] While the complaint was framed in terms of uninsured/underinsured claims, the representative of Westfield acknowledged in her deposition that the tortfeasor was uninsured.

of any type." Westfield argued that the definitions of motor vehicle and trailer in the general provisions section of the policy were controlling. The Estate also relied on the definition of motor vehicle in the general provisions section but has additionally pointed out that the definition of uninsured motor vehicle references trailer of any type, yet the general provisions section contains a more limited definition of trailer.

{¶16} The general provisions section of the policy provides the following definitions of motor vehicle and trailer:

"*Motor Vehicle*" means:

**a**. A self-propelled land or amphibious vehicle; or

**b**. Any *trailer* or semi-trailer, which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

\* \* \*

"*Trailer*" means a vehicle designed to be pulled by a:

**a**. Private passenger auto; or

**b**. Pickup or van.

However, a *trailer* does not include a mobile home or any vehicle used as an office, store, display, residence or passenger conveyance.

{¶17} Yet, what neither side has pointed out or discussed is the fact that none of the words in the terms "land motor vehicle" and "trailer of any type" are in bold and italics in the uninsured motorists coverage portion of the policy. The general provisions portion of the policy, which states in a parenthetical that it is applicable to all sections of the policy, also states under

---

Given the foregoing, and the fact that the focus of the briefing and the trial court's entry was whether the horse-drawn buggy was an uninsured motor vehicle as defined by the policy, we will limit our discussion accordingly. Nonetheless, we note that the underinsured portion of the policy also defines an underinsured motor vehicle in part as "a land motor vehicle or trailer of any type[.]"

the definitions of you, your, we, us, and our, that "[o]ther words and phrases are defined. They are bold italics when used." Two of those defined terms include motor vehicle and trailer. In other portions of the policy, motor vehicle and trailer do appear in bold and italics, presumptively because the policy is referring to the previously defined terms. However, "land motor vehicle" and "trailer of any type[,]" as those terms are stated in the uninsured motorists coverage section of the policy, do not contain any words in bold and italics. Thus, there is an argument to be made that the definitions of motor vehicle and trailer contained in the general provisions portion of the policy might not apply to the terms used in the uninsured motorists coverage portion of the policy. *See Frank*, 2017-Ohio-1026, at ¶ 11; *see also Schroeder v. Auto-Owners Inc. Co.,* 6th Dist. Lucas No. L-03-1349, 2004-Ohio-5667, ¶ 28-29 (discussing the significance of varying typefaces in insurance policies). It appears that neither side considered this issue as it was not briefed below.

**{¶18}** And while this Court generally does not raise issues sua sponte, the issue before the trial court was whether the horse-drawn buggy qualified as an uninsured motor vehicle under the policy. In order to review the trial court's determination of that issue, this Court cannot ignore certain language in the policy merely because an argument regarding that language was not raised below. *See Frank* at ¶ 11 ("[O]ur task when interpreting an insurance policy is to examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy."). As neither side has had the opportunity to brief this issue, and because the trial court has not had the opportunity to consider how this issue might affect the ultimate issue of coverage, we determine it is appropriate to reverse the trial court's judgment and remand the matter for briefing by the parties, and consideration by the trial court. As a reviewing Court, this Court's role is not to decide matters in the first instance. *See, e.g.,*

*Montville Lakes Cluster Homeowners Assn. Phase One v. Montville Lakes Homeowners Assn.,* 9th Dist. Medina No. 16CA0082-M, 2017-Ohio-7920, ¶ 17.

{¶19} The Estate's assignment of error is sustained to the extent discussed above. To the extent the Estate has challenged the trial court's determinations that the insurance policy does not violate public policy and is not void as unconscionable or violative of Ohio law, review of those determinations are no longer properly before us in light of the remand.

III.

{¶20} To the extent discussed above, the Estate's assignment of error is sustained and this matter is remanded for proceedings consistent with this opinion. The judgment of the Wayne County Court of Common Pleas is reversed.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

{¶21} I agree that the judgment must be reversed and remanded but for a different reason. Under the parties' contract, uninsured motorists coverage is provided if an "uninsured motor vehicle" caused bodily injury. An "uninsured motor vehicle" can be either a land "motor vehicle" or "trailer of any type[.]" The trial court concluded that there was no coverage because the horse and buggy "does not meet the definition of a motor vehicle * * *." It appears to have failed to consider, however, whether the horse and buggy were a "trailer of any type[.]" That is an issue it must resolve in the first instance. On remand, I would direct the court to examine whether the horse and buggy were a "trailer of any type[,]" taking into consideration the issue identified by the lead opinion regarding the usage of bold and italicized terms in the contract.

APPEARANCES:

MICHAEL D. GOLDSTEIN and JOSEPH N. CINDRIC, Attorneys at Law, for Appellant.

CARI FUSCO EVANS, Attorney at Law, for Appellee.