[Cite as *Motorists Mutual Ins. Co. v. Soussou*, 2026-Ohio-984.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

MOTORISTS MUTUAL INSURANCE COMPANY

    Appellee

v.

KHADAR SOUSSOU, et al.

    Appellant

C.A. No.     2025CA0033-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     22CIV0827

DECISION AND JOURNAL ENTRY

Dated: March 23, 2026

SUTTON, Judge.

**{¶1}** Defendant-Appellant Khadar Soussou appeals the judgments of the Medina County Court of Common Pleas granting summary judgment in favor of Motorists Mutual Insurance Company, Praetorian Insurance Company, and American Select Insurance Company. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** This appeal concerns insurance coverage for a golf cart accident resulting in injuries to Steven Elliott. The accident is the subject of a related case, *Elliott v. Blue Heron Brewery & Event Center, LLC*, Medina Common Pleas Case No. 2024CIV0517 ("*Elliott v. Blue Heron*"). Mr. Soussou is also a defendant in *Elliott v. Blue Heron,* which has been stayed pending the outcome of this appeal, and Mr. Soussou is the sole remaining defendant in that case.

{¶3} The allegations in *Elliott v. Blue Heron* include: (1) in July 2019, Mr. Soussou's wedding and associated festivities were to be held at the Medina County home of Mr. Soussou's parents, Randa and Amjad Soussou; (2) with the permission of his employer Blue Heron Brewery & Event Center ("Blue Heron"), Mr. Soussou had borrowed two golf carts from Blue Heron to transport guests around his parents' property; (3) on the date of the wedding rehearsal, July 4, 2019, Mr. Elliott was a passenger in one of the golf carts, which was being driven by Mr. Soussou; (4) while operating the golf cart on Hamilton Road in Medina Township near the property of Mr. Soussou's parents, Mr. Soussou drove the golf cart off the side of the road; and (5) the golf cart tipped over, injuring Mr. Elliott.

{¶4} After the accident, Mr. Soussou was arrested for driving the golf cart under the influence of alcohol and subsequently pleaded no contest to the charge.

{¶5} Plaintiff-Appellee Motorists Mutual Insurance Company ("Motorists") insured Blue Heron at the time of the accident. Motorists filed a complaint for declaratory judgment against Mr. Soussou in the Medina County Court of Common Pleas, seeking a declaration that Motorists had no duty to defend or indemnify Mr. Soussou.

{¶6} Mr. Soussou filed a third-party complaint against QBE North America and Westfield Insurance Company seeking declarations that QBE and Westfield had a duty to defend and indemnify Mr. Soussou.

{¶7} American Select Insurance Company answered the third-party complaint, stating it had been improperly designated as Westfield but admitting it insured Mr. Soussou's parents Randa and Amjad Soussou at the time of the accident. American Select also counterclaimed against Mr. Soussou seeking a declaration that it owed no duty to defend or indemnify Mr. Soussou.

{¶8} Praetorian Insurance Company answered the third-party complaint, stating it had been improperly designated as QBE North America, denying it owed a duty to defend or indemnify Mr. Soussou, but admitting it had issued a homeowner's policy to Mr. Soussou that was in effect at the time of the accident. Praetorian also asserted a counterclaim seeking a declaration that Mr. Soussou was not entitled to coverage under the Praetorian policy.

{¶9} All three insurance companies, Praetorian, American Select, and Motorists, moved for summary judgment. The trial court, in separate judgment entries, granted summary judgment against Mr. Soussou and in favor of Praetorian, American Select, and Motorists, stating that they had no duty to defend and/or indemnify Mr. Soussou for the claims set forth by Mr. Elliott in *Elliott v. Blue Heron*.

{¶10} After summary judgment was granted in favor of Praetorian, Mr. Soussou moved to strike Praetorian's reply in support of its motion for summary judgment, arguing the reply included new arguments and new evidentiary materials "not properly framed with a supporting affidavit as contemplated by Civ.R. 56(C)." A magistrate denied the motion to strike but granted leave for Mr. Soussou to respond to the reply. Mr. Soussou filed a "Surreply in Response" to Praetorian's reply asking the trial court to vacate the summary judgment granted in favor of Praetorian. The trial court denied the motion to vacate the summary judgment in favor of Praetorian.

{¶11} Mr. Soussou has appealed, raising four assignments of error for our consideration. To facilitate our analysis, we will discuss the assignments of error concerning Praetorian together.

II.

## ASSIGNMENT OF ERROR I-PRAETORIAN

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF QBE NORTH AMERICA/PRAETORIAN INSURANCE COMPANY AND IN DENYING MR. SOUSSOU'S MOTION TO VACATE.**

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN FAILING TO RULE UPON, OR PRESUMPTIVELY DENYING, [MR.] SOUSSOU'S MOTION TO STRIKE [PRAETORIAN'S REPLY].**

{¶12} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id.* at 293. Rather, the non-moving party has a reciprocal burden of responding

by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶13} Insurance policies are contracts and are interpreted using the same principles as are used for other types of contracts. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-70 (1998). "An insurance policy is a contract whose interpretation is a matter of law. [O]ur task when interpreting an insurance policy is to examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. Moreover, [w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." (Alterations in original.) (Internal quotations and citations omitted.) *Frank v. Westfield Natl. Ins. Co.*, 2017-Ohio-1026, ¶ 11 (9th Dist.).

{¶14} Here, Praetorian issued a homeowner's insurance policy to Mr. Soussou in effect on the date of the golf cart accident. The Praetorian policy provided in relevant part:

SECTION II-EXCLUSIONS

    A. "Motor Vehicle Liability"

        1. Coverages . . . do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

           a. Is registered for use on public roads or property;

           b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence[.]"

{¶15} Relevant to this issue, "occurrence" is defined in the policy as an accident which results in bodily injury. Praetorian argues coverage is not provided under the policy because the State of Ohio requires a golf cart to be registered for use on public roads and the "occurrence" was on a public road.

{¶16} The burden is on Mr. Soussou to prove coverage under the policy. *City of Sharonville v. Am. Emp. Ins. Co.,* 2006-Ohio-2180, ¶ 19, quoting *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 34 (1981). The burden is on the insurance company to establish that an exclusion to coverage applies. *Goodell v. Motorists Mut. Ins. Co.,* 2017-Ohio-8425, ¶ 7, citing *Neal-Pettit v. Lahman*, 2010-Ohio-1829, ¶ 19.

{¶17} Ohio law includes a golf cart as an "under-speed vehicle" vehicle pursuant to R.C. 4501.01(XX), providing that an "'[u]nder-speed vehicle' means a three- or four-wheeled vehicle, including a vehicle commonly known as a golf cart, with an attainable speed on a paved level surface of not more than twenty miles per hour and with a gross vehicle weight rating less than three thousand pounds."[1] R.C. 4511.214(B)(a) provides in relevant part: "[n]o person shall operate an under-speed . . . vehicle . . . upon any street or highway except as follows: . . . *where a local authority has granted permission for such operation in accordance with section 4511.215 of the Revised Code*[.]" (Emphasis added.)

{¶18} R.C. 4511.215 provides that a local authority may authorize the operation of an under-speed vehicle on a public street or highway provided the local jurisdiction requires the vehicle to be inspected and registered in accordance with R.C. Chapter 4503. R.C. 4511.215 provides in relevant part:

(A) By ordinance or resolution, a local authority may authorize the operation of under-speed or utility vehicles or mini-trucks on a public street or highway under its jurisdiction. A local authority that authorizes the operation of under-speed or utility vehicles or mini-trucks *shall* do all of the following:

. . .

---

[1] Mr. Soussou did not specifically challenge that the golf cart at issue was an under-speed vehicle as defined by R.C. 4501.01(XX) in the summary judgment proceedings or in his appellate briefs, but raised the issue during oral argument.

(3) Permit the operation on public streets or highways of only those vehicles that successfully pass the required vehicle inspection [and] are registered in accordance with Chapter 4503. of the Revised Code[.]

(Emphasis added.)

{¶19} Therefore, the operation of a golf cart on a public roadway is authorized under Ohio law only where the local jurisdiction requires the golf cart to be inspected and registered. Here, Mr. Soussou intentionally entered and operated the golf cart on a public roadway. Mr. Soussou stated his intention was to "[d]rive around the neighborhood." Mr. Soussou's action of driving the golf cart on the public road triggered the state law requirement that the golf cart be registered, which triggered the exclusion in the Praetorian policy.

{¶20} Mr. Soussou argues that the Ohio Revised Code does not mandate a local jurisdiction to require a golf cart to be registered. This argument misses the point. Ohio law requires a golf cart operated on a public road to be registered. This golf cart was operated on a public road. Therefore, Praetorian's motor vehicle liability exclusion applies.

{¶21} Mr. Soussou argues in his fourth assignment of error the trial court erred in denying his motion to strike Praetorian's reply brief in support of summary judgment, because the reply brief asserted new arguments outside the scope of his brief in opposition to Praetorian's motion for summary judgment and because Praetorian attached exhibits that failed to comply with Civ.R. 56. Specifically, Mr. Soussou argues Praetorian raised as a new issue the golf cart's registration status in its reply. However, a review of Mr. Soussou's brief in opposition to Praetorian's motion for summary judgment shows Mr. Soussou raised the issue of the registration of the golf cart and Praetorian's reply addressed that issue. Also, the trial court allowed Mr. Soussou to respond to Praetorian's reply, and Mr. Soussou did so. In denying Mr. Soussou's motion to vacate the order granting summary judgment in favor of Praetorian, the trial court stated, "[t]he court has again

reviewed the briefs of the parties and hereby denies [Mr.] Soussou's motion to vacate the summary judgment. The journal entry granting Praetorian Insurance summary judgment . . . remains the order of this court."

{¶22} Mr. Soussou also argues improper evidence was attached to Praetorian's reply. This evidence includes evidence that the golf cart was not registered. For purposes of whether the Praetorian policy provides coverage, the material facts are that the accident involved a golf cart and the golf cart was operated on a public road. These facts are not disputed by Mr. Soussou. Whether this particular golf cart was registered is not material. The Praetorian policy excludes coverage for vehicles that are registered for use on public roads and for vehicles that are not registered but required to be. Here, the golf cart was operated on a public road and therefore was required to be registered. If it was registered, the exclusion applies. If it was not registered, the exclusion applies.

{¶23} Because there is no genuine issue of material fact, and because Praetorian was entitled to judgment as a matter of law, the trial court did not err in granting summary judgment in favor of Praetorian. Under the undisputed facts of this case, Praetorian's policy excludes coverage for the golf cart accident at issue.

{¶24} In addition, given that Mr. Soussou had the opportunity to respond to Praetorian's reply in support of its motion for summary judgment and did so by filing a surreply, and because Praetorian was responding to an issue raised by Mr. Soussou, the trial court did not err in not striking Praetorian's reply brief in support of its motion for summary judgment.

{¶25} Accordingly, Mr. Soussou's first and fourth assignments of error are overruled.

**ASSIGNMENT OF ERROR II-AMERICAN SELECT**

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF WESTFIELD INSURANCE COMPANY/AMERICAN SELECT INSURANCE COMPANY.**

**{¶26}** American Select issued a homeowner's insurance policy to Mr. Soussou's parents Randa and Amjad Soussou in effect on the date of the golf cart accident. Randa and Amjad Soussou are the named insureds on the policy. The homeowners' policy does provide limited coverage for the use of motor vehicles and provides coverage for "other persons using [a motor vehicle] on an insured location with" the consent of the named policy holders. The policy provides in relevant part that "insured location" is the residence premises and "other structures and grounds" used by the named insureds as a residence.

**{¶27}** It is undisputed that the golf cart is a motor vehicle and that the accident occurred on a public road and not on the property or grounds of the residence of Mr. Soussou's parents. Nevertheless, Mr. Soussou argues there remains a genuine issue of fact as to whether the "alleged tortious conduct began" on the insured location when Mr. Soussou decided to drive the golf cart while under the influence and take Mr. Elliott with him from the insured location. American Select argues the golf cart accident did not occur on an "insured location" as defined in the American Select policy and therefore Mr. Soussou is not an insured under the policy. Therefore, the arguments boil down to whether just the location of the accident is determinative of whether Mr. Soussou is an insured or whether the location of the some of the conduct leading to the accident is included as an "insured location." This is a legal issue involving interpretation of the insurance contract, not a factual issue. The material facts are not in dispute. The golf cart was driven from the property of Mr. Soussou's parents onto the public roadway, but the accident itself occurred on a public roadway.

{¶28} American Select has cited the case *DeWitt v. Nationwide Mut. Fire Ins. Co.,* 109 Ohio App.3d 716 (11th Dist. 1996) in support of its argument that "insured location" does not extend to the location of the accident if the accident occurs off an "insured location." In *DeWitt*, the appellant was injured while riding an all-terrain vehicle ("ATV") owned by an "insured" under a Nationwide homeowner's insurance policy. *Id.* at 717. The insured was the son of the named policy holder/homeowner. The appellant was injured while using the ATV on a camping trip and not on the homeowner's property.

{¶29} The issue in *DeWitt* was whether a motor vehicle exclusion in the policy was applicable. In *DeWitt*, the policy provided it would pay damages to persons injured by an accident on an insured location, or off the insured location if the bodily injury was caused by activities of an insured. *Id.* The Nationwide policy, however, excluded from coverage injuries arising out of the use of a motor vehicle owned by an insured. *Id.* The appellant in *DeWitt* argued the basis for his claim was not the use of the motor vehicle, but rather the use of improper lug nuts by the insured while installing after-market wheels on the ATV, and this conduct occurred on an insured location. The court in *DeWitt* stated, "[c]ourts have held that the location of the accident rather than the location of the negligence that caused the accident is dispositive on the applicability of the exclusion clause." *Id.* at 720. While in *DeWitt* the issue was whether the motor vehicle exclusion applied, and here, the issue is whether Mr. Soussou is an insured, both cases involve a determination of what is an "insured location." The *DeWitt* case is persuasive. Both cases involved conduct occurring on an "insured location" allegedly leading to or causing accidents occurring elsewhere. In the case before this Court, it is undisputed that the accident occurred on a public roadway and did not occur on the property of Mr. Soussou's parents. The American Select policy provides "insured" means the named policy holders, in this case, Randa and Amjad

Soussou, and "[o]ther persons using the vehicle on an 'insured location.'" "Insured location" does not include a public roadway. "Insured location" does include the premises and grounds used by the named policy holders as a residence. Therefore, had the accident occurred on the property of Randa and Amjad Soussou, Mr. Soussou may be an insured. But because the accident did not occur on an "insured location," Mr. Soussou is not an insured under the American Select policy.

{¶30} Mr. Soussou has not offered any caselaw to support his argument that a public roadway becomes an "insured location" where alleged negligence or tortious conduct leading to the accident occurs on or begins on an insured location.

{¶31} Because there is no genuine issue of material fact and American Select was entitled to judgment as a matter of law, the trial court did not err in granting summary judgment in favor of American Select.

{¶32} Accordingly, Mr. Soussou's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III-MOTORISTS MUTUAL

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF MOTORISTS MUTUAL INSURANCE COMPANY.**

{¶33} Motorists had issued an insurance policy to Blue Heron in effect on the date of the golf cart accident. The Motorists policy had three forms relevant to this appeal: (1) commercial general liability; (2) liquor liability coverage; and (3) business auto coverage. Each form sets forth its own definitions, coverages, and exclusions. It is undisputed that Mr. Soussou was not in the course of his employment with Blue Heron at the time of the accident.

**Commercial General Liability**

{¶34} The Commercial General Liability form defines an "insured" as the limited liability company, its members but only with respect to the conduct of the company's business, its managers, but only with respect to their duties as managers, its volunteer workers while performing

duties related to the conduct of the business, and its employees for acts within the scope of their employment or while performing duties related to the conduct of the business.

{¶35} Here, it is undisputed that Mr. Soussou was not acting in the course and scope of his employment with Blue Heron at the time of the accident. He was attending his own wedding rehearsal. Therefore, he is not an insured under the commercial general liability portion of the Motorists' policy.

**Liquor Liability Coverage**

{¶36} Motorists' liquor liability coverage portion of the insurance contract states in part:

> [w]e will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such injury is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

{¶37} The liquor liability form defines an "insured" as the limited liability company, members of the company with respect to the conduct of the business, and managers, but only with respect to their duties as managers. Employees of the company are also "insureds," but only for acts within the scope of their employment or while performing duties related to the conduct of the business.

{¶38} Again, because it is undisputed that Mr. Soussou was not acting in the course and scope of his employment with Blue Heron at the time of the accident, he is not an insured under the liquor liability portion of the Motorists' policy.

**Business Auto Coverage**

{¶39} The Motorists business auto coverage form defines an "insured" as the company (Blue Heron) for any covered auto, and anyone else while using a covered auto owned by the company with the company's permission. Section V of the business auto coverage form defines "auto" as a land motor vehicle designed for travel on public roads. There is some dispute between

Motorists and Mr. Soussou as to whether the golf cart at issue meets the definition of "auto" as defined by the business auto coverage form. Assuming, without deciding, that the golf cart is an auto, Motorists' business auto coverage form requires the auto involved be a "hired" or "non-owned" auto for coverage to be provided. The business auto form only provides coverage for *hired* autos and autos Blue Heron *does not own*. Therefore, autos that Blue Heron owns are not covered under the business auto coverage form.

{¶40} Motorists asserts there is no genuine issue of material fact that the golf cart was owned by Blue Heron. Mr. Soussou argues there remains a genuine issue of material fact concerning whether Bue Heron owned the golf cart and points to his own deposition testimony which he claims is insufficient to demonstrate that Blue Heron owned the golf cart. In response to the question, "is that the only golf cart that's owned by Blue Heron-that was owned by Blue Heron at the time of this rehearsal dinner?" Mr. Soussou answered, "[t]hey had two of them." Therefore, Mr. Soussou, who was employed as a general manager of Blue Heron at the time of the accident, admitted the golf cart was owned by Blue Heron. In addition, the record reflects Praetorian settled a claim for damage to the golf cart with the *owner* of the golf cart, Blue Heron, and Mr. Soussou asserted in his opposition to Praetorian's motion for summary judgment that Blue Heron *owned* the golf cart, stating his "employer, Blue Heron, owned two golf carts for use at Blue Heron's facilities." Mr. Soussou's argument that there is now a genuine issue of fact concerning whether Blue Heron owned the golf cart is not well-taken given his previous statements and arguments that Blue Heron did own the golf cart.

{¶41} Because Mr. Soussou was not acting in the course and scope of his employment with Blue Heron at the time of the accident, coverage is not available under Motorists' commercial general liability or liquor liability forms, and because the golf cart was owned by Blue Heron,

coverage is not available under the business auto coverage form. Because there is no genuine issue of material fact and because Motorists is entitled to judgment as a matter of law, the trial court did not err in granting summary judgment in favor of Motorists.

{¶42} Accordingly, Mr. Soussou's third assignment of error is overruled.

III.

{¶43} For the forgoing reasons, Mr. Soussou's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

SCOTT J. ROBINSON and WILLIAM PESESKI, Attorneys at Law, for Appellant.

MICHELLE L. BURDEN, Attorney at Law, for Appellee.

PAUL W. FLOWERS, Attorney at Law, for Appellee.

W. CRAIG BACHEIN, THOMAS J. SHEEHAN, and STEPHAN C. KREMER, Attorneys at Law, for Appellee.

BRIAN D. SULLIVAN, Attorney at Law, for Appellee.

CARI FUSCO EVANS, Attorney at Law, for Appellee.