**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Sauer v. Crews,* **Slip Opinion No. 2014-Ohio-3655.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3655

SAUER ET AL. *v.* CREWS ET AL., APPELLEES; CENTURY SURETY COMPANY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Sauer v. Crews,* **Slip Opinion No. 2014-Ohio-3655.]**

*Insurance—Commercial general-liability policy—Exclusions from coverage—Trailers—Policy definition of "mobile equipment" does not include trailers—Provision excluding trailers from coverage not ambiguous—In determining whether insurance policy provision is ambiguous, court must consider context in which provision is used.*

(No. 2013-0283—Submitted February 26, 2014—Decided September 2, 2014.)

APPEAL from the Court of Appeals for Franklin County, No. 12AP-320, 2012-Ohio-6257.

_____

SYLLABUS OF THE COURT

In determining whether an insurance policy provision is ambiguous, a court must consider the context in which the provision is used.

_____

**LANZINGER, J.**

{¶ 1} In this case, we are again asked to consider the language of an insurance policy. Specifically, the question is, Should ambiguity be determined only after the language at issue is examined in light of the overall context of the policy? We answer in the affirmative, i.e., that in determining whether a policy provision is ambiguous, courts must consider the context in which the specific language of the provision is used. Based on this rule, we conclude that the policy provision in this case is not ambiguous and does not provide coverage.

I. Case Background

{¶ 2} On November 24, 2006, Julia S. Augenstein's vehicle collided with a flatbed trailer owned by appellees, Stinson J. Crews and Stinson Crews Trucking (collectively, "Crews"). During paving work on Columbus Street in Grove City, Ohio, Crews had parked without a permit in a no-parking zone and blocked most of Augenstine's lane of travel. Augenstine, who was 86 years old, died as a result of the injuries she sustained in the accident.

{¶ 3} The executors of Augenstine's estate, Sharon A. Sauer and Karen S. Streets, filed a survivorship action and an action alleging wrongful death against Crews; Raymond L. Jackson, the driver of a dump truck involved in the paving work; and Mariann Jackson, the owner of the dump truck driven by Raymond.[1] Crews then filed a third-party complaint against appellant, Century Surety Company ("Century"), seeking a declaration that Crews is entitled to coverage in the wrongful-death action as an insured under a commercial general-liability ("CGL") policy issued by Century. Century counterclaimed, seeking its own declaration that the CGL policy excludes coverage in the wrongful-death action. Before trial, the liability and coverage portions of the case were bifurcated. The court held a bench trial on the issue of liability.

---

[1] Raymond L. Jackson and Mariann Jackson are not parties to this appeal.

**{¶ 4}** The trial court found that Crews's negligence was the sole proximate cause of the accident and entered a judgment of $251,552.04 in compensatory damages against Crews. The judgment entry stated that there was no just cause for delay, thus permitting an immediate appeal even though the third-party complaint and counterclaim had not been resolved.

**{¶ 5}** On appeal, Crews argued that it was not solely liable for the accident. Crews asserted that Augenstein was herself partly liable due to her own negligence. Crews contended that Augenstein failed to maintain an assured clear distance ahead in violation of R.C. 4511.21(A), she operated her motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), and she was driving with significantly reduced vision due to macular degeneration. The Tenth District Court of Appeals rejected these arguments and affirmed the judgment of the trial court assigning Crews sole liability for the accident. *Sauer v. Crews*, 10th Dist. Franklin No. 10AP-834, 2011-Ohio-3310.

**{¶ 6}** On remand, both Crews and Century agreed to submit Crews's declaratory-judgment action to the trial court for a decision on the briefs. After examining the CGL policy that Century issued to Crews, the trial court's analysis focused upon a provision in the policy providing that "mobile equipment" is not included within the definition of "auto" and is therefore not excluded from coverage. The trial court wrote that to determine whether the trailer qualified as "mobile equipment," it had to decide whether the paving machinery that Crews transported on the trailer was "cargo" as used in the policy. The trial court found the term "cargo," which is not defined in the policy, to be ambiguous and accordingly construed this language against Century, the insurer. The court concluded that the CGL policy provides coverage in this underlying wrongful-death action.

**{¶ 7}** On appeal, Century argued that the trial court had misinterpreted the language of the CGL policy. Century asserted that the trial court had

incorrectly determined that the trailer is "mobile equipment" as defined by the policy and that even if the trailer were mobile equipment, the claim involving the trailer was not covered because of a provision in the CGL policy excluding coverage for claims arising out of the transport of mobile equipment. The Tenth District disagreed and affirmed the trial court's judgment that the CGL provides coverage.

{¶ 8} Century appealed to this court, and we accepted Century's two propositions of law:

> 1. A registered commercial flatbed trailer, used to haul construction equipment to and from job sites, is not a vehicle maintained for purposes other than transportation of cargo within the meaning of a commercial general liability policy, and, therefore, claims arising out of the ownership or use of such a trailer are excluded from coverage under the terms of such policies.
>
> 2. When considering whether an insurance policy provision is ambiguous, a reviewing court must consider the context in which the policy provision is used—particularly where that context pertains to a highly regulated commercial activity such as the use of commercial vehicles upon public roadways.

135 Ohio St.3d 1458, 2013-Ohio-2285, 988 N.E.2d 578.

## II. Legal Analysis

{¶ 9} The outcome of this cases hinges upon whether the CGL policy insured the trailer used by Crews. Century argues in its second proposition of law that the lower courts improperly determined that the relevant policy provisions were ambiguous. We accordingly address this second proposition of law, which

deals with the proper method of interpreting the language of insurance policies, before addressing the first proposition of law, which asks us to apply that method to the particular language in the CGL policy before us.

A. *The Context in Which a Provision Is Used Must Be Considered in Determining Whether Ambiguity Exists*

{¶ 10} "An insurance policy is a contract whose interpretation is a matter of law." *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982), citing *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 164 N.E.2d 745 (1960), paragraph one of the syllabus.

{¶ 11} We have stated that "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). Furthermore, "[i]f provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.' " *Sharonville* at ¶ 6, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus.

{¶ 12} We have previously discussed the effect of ambiguity in an insurance contract:

> Although ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured, see, e.g., *King v. Nationwide Ins. Co.*, 35 Ohio St.3d

208, 519 N.E.2d 1380, syllabus, it is equally well settled that a court cannot create ambiguity in a contract where there is none. See, e.g., *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119, 661 N.E.2d 1005. Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation. Id. at 119-120, 661 N.E.2d 1005.

*Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 16.

**{¶ 13}** Century argues that the language of the provisions in its policy must be examined in the context of the overall policy and with respect to the policy's purpose. We agree. We have previously stated that insurance policies cannot be read in an overly circumscribed fashion. *Gomolka*, 70 Ohio St.2d at 172, 436 N.E.2d 1347. "One may not regard only the right hand which giveth, if the left hand also taketh away. The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated parts thereof." *Id.*, citing *Stickel v. Excess Ins. Co. of Am.*, 136 Ohio St. 49, 53, 23 N.E.2d 839 (1939), and *Germania Fire Ins. Co. v. Schild*, 69 Ohio St. 136, 68 N.E. 706 (1903).

**{¶ 14}** Since courts must examine the insurance policy as a whole to determine the parties' intentions, it follows that courts must also examine the policy as a whole when determining whether a word or phrase of the policy is ambiguous. We accordingly hold that in determining whether an insurance policy provision is ambiguous, a court must consider the context in which the provision is used.

**{¶ 15}** In this case, the trial court and the Tenth District found the word "cargo" to be ambiguous. The analysis of those courts, however, isolated the word "cargo," rather than examining the intended scope of the policy as a whole.

A consideration of the overall context of the policy would show that the policy is unambiguous in excluding the trailer from coverage.

*B. The Language of the CGL Policy*

**{¶ 16}** The insuring portion of the CGL policy provides that Century "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Then the policy sets forth the exclusions that state what the insurance does not cover.

> **SECTION I—COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> * * *
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **g. Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

(Capitalization and boldface sic.)

**{¶ 17}** The CGL policy defines "auto" as:

> **SECTION V—DEFINITIONS**
>
> * * *

**2.** "AUTO" MEANS:

**a.** A land motor vehicle, *trailer* or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

(Boldface sic; italics added for emphasis.)

{¶ 18} "Mobile equipment" is also defined in Section V of the policy:

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

> **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
>
> **(2)** Cherry pickers and similar devices used to raise or lower workers;
>
> **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or *cargo*.

(Boldface sic; italics added for emphasis.)

**{¶ 19}** Century argues that the policy is unambiguous, asserting that in this case the trailer qualifies as an "auto" and is not "mobile equipment" under the policy definitions. Crews counters, and the appellate court held, that the policy is ambiguous because its failure to define the term "cargo" makes it unclear whether the policy is intended to exclude the trailer from coverage. Crews asserts that the policy's ambiguity should be construed strictly against Century and that we should accordingly hold that the trailer meets the definition of "mobile equipment" under Section V(12)(f) of the policy and thus the policy provides coverage for the trailer. We agree with Century that the policy is unambiguous and does not provide coverage for the trailer.

*C. The CGL Policy Does Not Provide Coverage*

**{¶ 20}** When viewing the CGL policy as a whole we conclude that the policy clearly excludes the trailer from coverage in this case. The fault in Crews's analysis is that it fixates upon a single word, "cargo," and fails to consider the intent of the policy as a whole.

**{¶ 21}** The policy excludes coverage for any bodily injury or property damage arising from the use of an "auto" by the insured. Section V(2)(a) of the policy explicitly states that a "trailer" designed for travel on public roads is an

"auto" for purposes of the policy.[2] This provision establishes a fundamental premise of the policy: trailers are excluded from coverage.

{¶ 22} Crews is correct that the policy provides an exception to the "auto" exclusion. Anything qualifying as "mobile equipment" as defined by the policy is excepted from the definition of "auto." Crews argues that the trailer qualifies as "mobile equipment" pursuant to Section V(12)(f) of the policy. However, when looking at this section in context, it is clear that the trailer does not qualify as "mobile equipment."

{¶ 23} Section V(12) of the CGL policy lists specific types of land vehicles that qualify as "mobile equipment." Subsections (a) through (d) group these specific types of vehicles into categories, such as vehicles maintained solely on or next to premises rented or owned by the insured and vehicles that travel on crawler treads. Subsections (e) and (f) are catchall provisions, but Crews relies only on (f), which classifies the following as "mobile equipment": "Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo." (Boldface sic.) When read in context with the rest of Section V(12), it is clear that the catchall provision of subsection f is meant to classify as "mobile equipment" those land vehicles not specifically named in Section V(12) that are of the same subclass of vehicles as those that are named in the section. A trailer is not of the same subclass as the land vehicles identified in Section V(12). It follows, then, that Section V(12)(f)'s catchall provision does not apply to the trailer in this case and that it is excluded from coverage pursuant to Section V(2)(a).

{¶ 24} Because we conclude that the trailer does not belong to the subclass of land vehicles set forth in Section V(12) of the CGL policy, the precise definition of the word "cargo" as used in that section is irrelevant to our analysis.

---

[2] Crews concedes that the trailer in this case was designed for travel on public roads.

We accordingly disagree with the lower courts' conclusion that the CGL policy's failure to define the term "cargo" creates an ambiguity that, when construed in favor of the insured, must be read in a way that provides coverage for the trailer. Instead, we conclude that the plain language of the CGL policy clearly excludes trailers from coverage as autos pursuant to Section V(2)(a) of the policy. We finally note that because trailers do not fit into the subclass of land vehicles described in Section V(12) of the CGL policy, we need not address the portion of Century's first proposition of law asking us to construe the phrase "maintained primarily for purposes other than the transportation of persons or cargo" as found in Section V(12)(f).

### III. Conclusion

{¶ 25} When interpreting a provision in an insurance policy, courts must look at the provision in the overall context of the policy in determining whether the provision is ambiguous. The CGL policy issued by Century clearly provides that trailers are excluded from coverage. We accordingly reverse the judgment of the court of appeals and remand this case to the court of common pleas for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, DEWINE, and O'NEILL, JJ., concur.

PFEIFER, J., dissents and would dismiss the appeal as having been improvidently accepted.

PAT DEWINE, J., of the First Appellate District, sitting for FRENCH, J.

_____

Plymale & Dingus, L.L.C., and M. Shawn Dingus, for appellees.

Davis & Young and Richard M. Garner, for appellant.

Koehler Neal, L.L.C., and Timothy J. Fitzgerald, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Vorys, Sater, Seymour & Pease, L.L.P., Thomas E. Szykowny, and Michael Thomas, urging reversal for amicus curiae Ohio Insurance Institute.

_____