NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0091n.06

Case No. 21-3556

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Mar 02, 2022
DEBORAH S. HUNT, Clerk

SYSTEM OPTICS, INC., dba Novus Clinics,

    Plaintiff-Appellant,

v.

TWIN CITY FIRE INSURANCE COMPANY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before: BATCHELDER, NALBANDIAN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** In March 2020, Ohio ordered the suspension of elective medical procedures to help combat the evolving COVID-19 pandemic. Those orders resulted in eye-care provider System Optics deciding to close its clinics, at considerable cost to the company. Seeking to recoup that lost income, the company filed a claim with its insurer, Twin City. Twin City denied the claim, and System Optics sued. The district court entered judgment for Twin City. We now affirm.

## BACKGROUND

Like many states during the early stages of the COVID-19 pandemic, Ohio issued a series of orders restricting personal and business activities throughout the state, with the goal of limiting the virus's spread. One of those orders prohibited elective medical procedures that require the use

of personal protective equipment. Another directed all persons to stay home unless engaged in essential work or activity.

System Optics operates several eye-care clinics near Akron. The onset of the pandemic, however, produced significant obstacles for the company's continued operations. First off, its clinics, which offered non-essential services, fell within the state's closure orders. And, even apart from the command of any closure order, System Optics feared that business as usual would expose employees and customers alike to an unacceptably high risk of catching COVID-19. As a result, System Optics decided to shutter its clinics. Revenue shortfalls and layoffs ensued. In all, System Optics expected to lose more than $2 million due to its decision to shut down operations.

System Optics sought to recoup these losses from Twin City, its insurer. Twin City, however, denied coverage. So System Optics sued Twin City in Ohio state court. In its complaint, System Optics sought a declaration that its policy with Twin City covered losses resulting from COVID-19 and the closure orders. Twin City removed the case to federal court based on diversity jurisdiction. And once it did, it moved for judgment on the pleadings, which the district court granted. In the district court's view, System Optics's allegations failed to satisfy the policy language requiring a "direct physical loss of or physical damage to property," a predicate for System Optics to be eligible for coverage. This appeal followed.

**ANALYSIS**

Judgment on the pleadings is appropriate in cases where the complaint's allegations do not "plausibly give rise to an entitlement to relief." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). We review the district court's decision granting judgment on the pleadings de novo. *Clark v. Stone*, 998 F.3d 287, 297 (6th Cir. 2021).

The parties agree that Ohio law applies in this case; we see no reason to second-guess their assessment. *See Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019) (observing that courts "generally accept the parties' agreement about the governing law during the litigation" (citing *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir. 1991) (Posner, J.))). Under Ohio law, "[a]n insurance policy is a contract whose interpretation is a matter of law." *Sauer v. Crews*, 18 N.E.3d 410, 413 (Ohio 2014) (quotation omitted). In undertaking that interpretation, Ohio courts examine the "plain and ordinary meaning" of the policy's terms, read in context. *World Harvest Church v. Grange Mut. Cas. Co.*, 68 N.E.3d 738, 744 (Ohio 2016) (quotation omitted); *Sauer*, 18 N.E.3d at 413.

Underlying System Optics's claim for coverage are three different policy provisions: one covering business income, another covering extra expense, and a third covering civil authority. Each provision protects against the consequences of property damage. For instance, according to the policy language, Twin City agreed to pay for lost business income where System Optics suspended operations due to "direct physical loss of or physical damage to property":

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

Likewise, "direct physical loss or physical damage to property" triggers the extra expense provision:

> We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

3

Finally, civil authority coverage exists if the government barred access to System Optics's clinics "as the direct result of a Covered Cause of Loss" to nearby property:

> This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

And as relevant here, "Covered Causes of Loss" are defined in the policy as "risks of direct physical loss" (subject to certain exclusions and limitations). R.1-1, PageID#60.

As these provisions reflect, for System Optics to be entitled to coverage, it must allege a direct physical loss of or physical damage to property. That much the parties agree on. But they disagree over what constitutes a "direct physical loss." System Optics contends that the phrase includes, among other things, the inability to put property to its intended purpose—in short, loss of use. To Twin City's eye, however, System Optics's formulation reads "physical" out of the policy.

In assessing which reading of "direct physical loss" is more faithful to the policy language, we first look to decisions from the Ohio Supreme Court. That state's high court, however, has yet to define the phrase. *Sanzo Enters., LLC v. Erie Ins. Exch.*, --- N.E.3d ---, 2021 WL 5816448, at *6 (Ohio Ct. App. Dec. 7, 2021). Absent a concrete answer to the question, we must predict whether the Ohio Supreme Court would interpret direct physical loss to include loss of use. *See Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 649 (6th Cir. 2021).

On this point, we do not write on a clean slate. Recently, our Court held that, under Ohio law, a ban on in-person dining did not inflict "direct physical loss of or damage to" the insured's restaurant. *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021). That was so, we explained, because "direct physical loss of or damage to" property means what it says—tangible destruction, in whole or part, or tangible or concrete deprivation—and thereby excludes

4

mere loss of use. *Id.* And we do not stand alone in that assessment. The Ohio Court of Appeals recently confirmed that "interpret[ing] the phrase 'physical loss of property' to include loss of the ability to make 'full use' of the property is not within the ordinary and plain meaning of the terms in the policy." *Sanzo Enters.*, 2021 WL 5816448, at *8; *see also Nail Nook, Inc. v. Hiscox Ins. Co.*, --- N.E.3d ---, 2021 WL 5709971, at *5 (Ohio Ct. App. Dec. 2, 2021) (holding that a nail salon subject to an Ohio business closure order "could not prove 'direct physical loss of or damage to Covered Property'").

Applying those precedents here leads to a straightforward conclusion: System Optics fails to allege any direct physical loss of property or physical damage to property. Start with direct physical loss of property. According to System Optics's complaint, Ohio's closure orders prevented System Optics from performing non-essential medical procedures like eye exams at its clinics. But absent any allegation that the closure orders physically destroyed the clinics or otherwise tangibly deprived System Optics of property, System Optics suffered no direct physical loss. *See Santo's*, 15 F.4th at 401–02; *Dakota Girls*, 17 F.4th at 649. The same shortcoming plagues the company's argument that COVID-19 rendered the clinics "unsafe and unfit for their intended use" because continued operations would expose employees and the wider community to the virus.

Nor does System Optics plausibly allege physical damage to property. At best, the company alleges that "COVID-19 results in property damage and 'direct physical loss of or physical damage' to [its] premises" because the virus "can exist, contaminate, spread, and be contracted from surfaces and objects in and on premises." R.1-1, PageID#11. Conspicuously absent from that recitation is any factual allegation to support the inference that COVID-19 altered the physical condition of specific "surfaces and objects." And without one, the complaint's

"'threadbare recital[] of' the contract's language" fails to state a plausible physical damage claim. *Bridal Expressions LLC v. Owners Ins. Co.*, No. 21-3381, 2021 WL 5575753, at \*2 (6th Cir. Nov. 30, 2021) (per curiam) (quoting *Iqbal*, 556 U.S. at 663, 678); *Dakota Girls*, 17 F.4th at 649.

\*      \*      \*      \*      \*

Few, if any, businesses in our nation have gone untouched by COVID-19. Some have faced severe burdens. Others have shuttered. The gravity of the pandemic, however, does not authorize us to rewrite policy language to cover those losses when coverage is otherwise absent. We affirm.