[Cite as *Grange Indemn. Ins. Co. v. Hinds*, 2023-Ohio-4085.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

GRANGE INDEMNITY INSURANCE
COMPANY,

      PLAINTIFF-APPELLEE,                      CASE NO. 1-23-07

      v.

SHANE HINDS,

      DEFENDANT-APELLANT,
       -AND-
                                  O P I N I O N

MATTHEW FARMWALD,

      DEFENDANT-APPELLEE.

**Appeal from Allen County Common Pleas Court**
**Civil Division**
**Trial Court No. CV 2021 0247**

**Judgment Affirmed in Part, Reversed in Part**

**Date of Decision:  November 13, 2023**

**APPEARANCES:**

    *Clay W. Balyeat* **for Appellant**

    *Robert J. Huebner* **for Appellee, Grange Indemnity Insurance**
    **Company**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Shane Hinds ("Hinds"), appeals the February 3, 2023 judgment of the Allen County Court of Common Pleas declaring that plaintiff-appellee, Grange Indemnity Insurance Company ("Grange Insurance"), is excused from indemnifying defendant-appellee, Matthew Farmwald ("Farmwald"), from liability from claims asserted against him by Hinds from dog-bite injuries.  For the reasons that follow, we affirm in part and reverse in part.

{¶2} This case arises from dog-bite injuries, which Hinds sustained on July 28, 2020 from Farmwald's dog, Caesar, to his nose and right arm.  Hinds's injuries occurred when he was caring for Caesar while Farmwald and his then girlfriend, Kelly Wildermuth ("Wildermuth"), traveled to Florida.  Hinds is the adult son of Wildermuth.  Caesar bit Hinds when Hinds "was trying to feed and water him." (Hinds Depo. at 76).  As a result of his injuries, Hinds filed a complaint (in another case) against Farmwald in the trial court on May 18, 2021.

{¶3} Farmwald purchased Caesar, a mixed-breed dog, consisting of Dogo Argententio (a large, mastiff-type dog) and Great Dane, "in 2013 or 2014" "after [he] got back from Afghanistan."  (Farmwald Depo. at 7).  Farmwald originally obtained a homeowner's insurance policy with Grange Insurance in May 2019.  The policy at issue in this case was effective from May 3, 2020 until May 3, 2021.  Farmwald selected the homeowner's policy with Grange Insurance because he "was

very limited in who [he] could have insurance-wise because a mastiff requires a certain carrier. They had cheaper plans but you could not have the dog on the policy, so [he] had to choose one that would cover the animal." (*Id.* at 11). Farmwald's policy cost "an extra three or four hundred bucks a year to have a large breed animal covered." (*Id.* at 18).

{¶4} Prior to the incident with Hinds, Caesar bit or nipped a person or another animal on five separate occasions. Specifically—all prior to the incident with Hinds—Caesar nipped the arm of Kami Ellis ("Kami"), Hinds's minor sister; bit Wildermuth's right thumb; nipped Wildermuth's and Hinds's dogs, Meeka (a Siberian Husky) and Milo (a Jack Russel Terrier), and bit an Australian Shepard at a dog park. However, in each of those five instances, the record reveals that Caesar was reacting to guard food, a toy, or a dog crate.

{¶5} In this case, Grange Insurance filed a complaint for declaratory judgment on August 16, 2021 against Hinds and Farmwald requesting that the trial court declare that it did not owe Farmwald any rights of indemnity to pay the claims asserted by Hinds (in the other case). On August 26, 2021, Hinds filed his answer. After being granted leave, Farmwald filed his answer on February 24, 2022 along with a counterclaim requesting that the trial court declare that he "is entitled to insurance coverage and a defense for the claims which are the subject of the complaint" in the case brought by Hinds. (Doc. No. 19). On March 9, 2022, Grange Insurance filed its answer to Farmwald's counterclaim.

{¶6} On July 15, 2022, Grange Insurance filed a motion for summary judgment, arguing that it is entitled to judgment as a matter of law since Farmwald's "policy of insurance did not and does not cover bodily injury caused by a dog with a prior history of bodily injury to a person or animal." (Doc. No. 23). On August 9 and 31, 2022, Farmwald and Hinds, respectively, filed a memorandum in opposition to Grange Insurance's motion for summary judgment. On September 12, 2022, Grange Insurance filed its reply to Farmwald's and Hinds's memoranda in opposition to its motion for summary judgment.

{¶7} On February 3, 2023, the trial court granted judgment in favor of Grange Insurance after concluding that it was entitled to judgment as a matter of law because "any and all claims asserted by or against Farmwald arising out of the July 28, 2020 incident are excluded from coverage under the Grange Insurance Policy." (Doc. No. 26).

{¶8} Hinds filed his notice of appeal on February 24, 2023. He raises two assignments on appeal, which we will discuss together.

### First Assignment of Error

**The Trial Court erred when it granted summary judgment in favor of Grange Insurance Company by determining that the Exclusion contained in the insurance contract negated coverage obligations for Grange Insurance for a dog bite.**

**Second Assignment of Error**

**The Trial Court erred by failing to address the material issues of fact which involve the clause in the insurance policy which nullifies the provision of exclusion for dog bites.**

{¶9} In his assignments of error, Hinds argues that the trial court erred by concluding that Farmwald's insurance policy excludes Hinds's injuries from coverage since Caesar previously caused bodily injury to a person or injury to another animal. In particular, in his first assignment of error, Hinds contends that Farmwald's insurance policy is "doubtful, vague or ambiguous relative to the language excluding the coverage for Farmwald's dog when applying an exclusion for coverage of the Defendant Farmwald's dog." (Appellant's Brief at 5). In his second assignment of error, Hinds specifically contends that the trial court "failed to address or consider the **issues of fact** regarding the directive in the policy which states 'Item b. (The exclusion) above **does not apply** in the event the animal is reacting to protect people or property from imminent harm.'" (Emphasis sic.) (*Id.* at 8, quoting Doc. No. 23, Ex. B).

*Standard of Review*

{¶10} "A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action." *Potts v. Unglaciated Industries, Inc.*, 7th Dist. Monroe No. 15 MO 0003, 2016-Ohio-8559, ¶ 62, citing

Civ.R. 56(A). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶11} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

{¶12} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.).

*Analysis*

**{¶13}** In this case, the trial court concluded that, "[c]onstruing all of the facts in favor of the non-moving parties, reasonable minds can reach only one conclusion: the policy in question excludes coverage for the July 28, 2020 injury caused by Caesar." (Doc. No. 26). Specifically, the trial court reasoned that "the policy in question excludes coverage if a dog has a history of prior bodily injury to a person or animal" and "Farmwald was aware of at least some of the incidents regarding Caesar that led to Caesar biting either another dog or a human." (*Id.*).

**{¶14}** On appeal, the parties dispute whether the policy's exclusion is ambiguous and whether there are genuine issues of material fact that the policy exclusion applies in this case. "'In Ohio, insurance contracts are construed as any other written contract.'" *Grange Ins. Co. v. Farmers Ins.*, 6th Dist. Lucas No. L-22-1059, 2022-Ohio-4303, ¶ 9, quoting *Andray v. Elling*, 6th Dist. Lucas No. L-04-1150, 2005-Ohio-1026, ¶ 18. "The coverage under an insurance policy is determined by construing the contract 'in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" *Crow v. Dooley*, 3d Dist. Allen No. 1-11-59, 2012-Ohio-2565, ¶ 8, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 211 (1988). Thus, policy "terms are to be given their plain and ordinary meaning * * * ." *Id.* If the language of the policy, read as a whole, "'is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.'"

*Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858, ¶ 10 (3d Dist.), quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984). "'Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation.'" *E.J. Zeller, Inc. v. Auto Owners Ins. Co.*, 3d Dist. Defiance No. 4-14-04, 2014-Ohio-4994, ¶ 15, quoting *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 16.

{¶15} "'Furthermore, "[i]f provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'"'" *Grange Ins.* at ¶ 10, quoting *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, ¶ 11, quoting *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus. "The reviewing court may then examine extrinsic evidence to determine the intent of the parties if a contract is ambiguous." *Crow* at ¶ 9.

{¶16} "[W]hen an insurance contract contains exceptions to coverage, there is a presumption that all coverage applies unless it is clearly excluded in the contract." *Id.* at ¶ 10. "'Accordingly, in order for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language.'" *Id.*, quoting *Bosserman*

*Aviation Equip. v. U.S. Liab. Ins. Co.*, 183 Ohio App.3d 29, 2009-Ohio-2526, ¶ 11 (3d Dist.).  That is, "under Ohio law, '"an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded.'"" (Emphasis sic.)  *Grange Ins.* at ¶ 10, quoting *Sauer* at ¶ 11, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665 (1992).

{¶17} "The party seeking to recover under an insurance policy bears the burden of demonstrating that the policy provides coverage for the particular loss." *Crow* at ¶ 11.  "However, 'when an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion.'" *Id.*, quoting *Beaverdam Contracting, Inc. v. Erie Ins. Co.*, 3d Dist. Allen No. 1-08-17, 2008-Ohio-4953, ¶ 19.

{¶18} In his first assignment of error, Hinds argues that the policy exclusion is ambiguous because it "does not provide a definition of **'Bodily Injury'**, nor does it provide the insured with enough detail or information for him to have determined that his dog Caesar would not be covered under his new Grange Insurance policy because of prior interactions with other dogs or persons before the policy was effective."  (Emphasis sic.)  (Appellant's Brief at 6-7).  In other words, Hinds contends that the policy "does not specify a degree of severity of harm or injury within the definition of Bodily Injury, only that the harm be 'bodily', or in the form of sickness or disease."  (*Id.* at 6).  Likewise, he contends that "[t]he exclusionary language states 'has **previously** caused', without citing a reference point as to when

-9-

the prior events are considered," which "creates an ambiguity which must be interpreted in favor of the insured." (Emphasis sic.) (*Id.* at 7). On the contrary, Grange Insurance contends that the policy is *not* ambiguous and argues that "[i]t is clear that the language can be summed up as an occurrence, in this case a dog bite, is not covered under para. 19 [sic] when there is previous injury or harm to a person or another animal prior to the occurrence except if the animal was reacting to protect people or property from imminent harm." (Appellee's Brief at 10).

{¶19} Farmwald's Homeowners HO-3 Special Policy provides, in its relevant part, as follows:

**SECTION II – PERSONAL LIABILITY PROTECTION**

**LIABILITY LOSSES WE COVER**

**COVERAGE E – PERSONAL LIABILITY**

**We** will pay all sums, up to **our** limit of liability shown on the Declarations page for this coverage, arising out of any one loss for which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** * * * , caused by an **occurrence** covered by this policy. * * *

If a claim is made or suit is brought against the **insured person** for damages because of **bodily injury** * * * caused by an **occurrence** to which this coverage applies, we will defend the **insured person** at **our** expense, using lawyers of **our** choice. * * * **We** may investigate or settle any claim or suit as **we** think appropriate.

COVERAGE F – MEDICAL PAYMENTS TO OTHERS

A. **We** will pay the **reasonable** expenses incurred, up to our limit of liability shown on the Declarations page for this coverage, for **necessary** medical, surgical, x-ray and dental services, prosthetic

devices, eyeglasses, prescription contacts, hearing aids, pharmaceuticals, ambulance, hospital, licensed nursing and funeral services. These expenses must be incurred within three years from the date of an accident causing **bodily injury** covered by this policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. On an **insured premises** with the permission of an **insured person**; or

2. Elsewhere, if the **bodily injury**:

\* \* \*

    c. Is caused by an animal owned by or in the care of an **insured person**;

\* \* \*

## PERSONAL LIABILITY LOSSES WE DO NOT COVER

A. Under **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others**, **we** do not coverage **bodily injury**

\* \* \*

19. Arising out of any animal that any **insured person** acquires, owns or keeps that:

    a. Is of a breed or kind named by or controlled by any local, state, or federal ordinance or law because of public safety concerns;

    b. Has previously caused:

        (1) **Bodily injury** to a person; or

        (2) Injury to another animal

* * *

>    Item **b.** above does not apply in the event the animal is reacting to
>    protect people or property from imminent harm.

(Emphasis sic.)  (Doc. No. 23, Ex. B).  As used in the policy, bodily injury "means bodily harm, sickness or disease, including required care, loss of services, and resulting death."  (*Id.*).

{¶20} We conclude that the policy exclusion is clear and unambiguous—that is, Grange Insurance met its burden of demonstrating that the policy exclusion clearly and unambiguously denies coverage when an animal has previously caused bodily injury to a person or injury to another animal.  Indeed, the policy exclusion clearly and unambiguously defines bodily injury to mean "bodily harm, sickness or disease, including required care, loss of services, and resulting death."  (Doc. No. 23, Ex. B).  *See Hawthorne v. Migoni*, 5th Dist. Tuscarawas No. 2003AP070054, 2004-Ohio-378, ¶ 13 (determining that the insurance policy's definition of "bodily injury" "as meaning 'bodily injury, sickness or disease'" was not unclear or ambiguous).  *See also Tuohy v. Taylor*, 3d Dist. Defiance No. 4-06-23, 2007-Ohio-3597, ¶ 23.

{¶21} Moreover, tracing the history of the phrase "bodily injury" as it is used in insurance policies, this court summarized that the plain and ordinary meaning of the term—defined identically or similarly as here—to encompass "'an injury caused by external violence * * * ."  *Grange Ins. Co. v. Sawmiller*, 3d Dist. Auglaize No.

2-13-19, 2014-Ohio-1482, ¶ 22, quoting *Burns v. Employers' Liab. Assur. Corp., Ltd.*, 134 Ohio St. 222, 233 (1938). In other words, "bodily injury" clearly and unambiguously means any "[p]hysical damage to a person's body." *Black's Law Dictionary* 906 (10th Ed.2014). *See, e.g.*, *Loudin v. Radiology & Imaging Servs., Inc.*, 185 Ohio App.3d 438, 2009-Ohio-6947, ¶ 30 (9th Dist.) (noting that "Black's Law Dictionary has equated 'physical injury' with 'bodily injury,' which it has defined as '[p]hysical damage to a person's body'"), quoting *Black's Law Dictionary* 801 (8th Ed.2004).

{¶22} Furthermore, contrary to Hinds's argument, the term "previously" as it is used in the policy exclusion does not render the exclusion ambiguous. Indeed, the plain and ordinary meaning of the term means "existing or occurring prior to something else in time or order." *American Heritage Dictionary* 982 (2d Ed.1985). Simply, "previously" clearly and unambiguously means occurring prior in time.

{¶23} Here, we conclude (based on the facts presented) that Grange Insurance presented evidence that Caesar previously caused bodily injury to a person. Specifically, Grange Insurance presented evidence that Caesar previously caused bodily harm—or physical damage to a person's body—to two people. First, Grange Insurance presented evidence that Caesar nipped Kami's arm. Indeed, according to Farmwald, "there was some very minor puncture wounds. One was a little less minor than the other where the teeth had broke the skin." (Farmwald Depo. at 30). (*See* Plaintiff's Ex. B). However, Kami did not require medical

-13-

attention. Further, Grange Insurance presented evidence that Caesar bit Wildermuth's right thumb. Expressly, Wildermuth testified that, even though she did not require medical care, "it pierce[d] the skin." (Wildermuth Depo. at 21). Importantly, Wildermuth testified that both incidents occurred prior in time to the incident involving Hinds and Caesar.

{¶24} Based on that evidence, we conclude that Grange Insurance presented evidence that Caesar previously caused bodily injury to a person—that is, Grange Insurance presented evidence that Caesar caused injuries by external violence to two people. Because Grange Insurance presented evidence that Caesar previously caused bodily injury to a person, we need not reach whether Caesar previously caused injury to another animal. Therefore, Hinds's first assignment of error is overruled.

{¶25} Nevertheless, we conclude genuine issues of material fact remain as to whether the exception to the policy exclusion applies in this case—that is, we conclude that there is a triable issue as to whether Caesar was reacting to protect people or property from imminent harm in the instances that he caused bodily injury to a person or injury to another animal. Specifically, in his second assignment of error, Hinds contends that "[t]he Trial Court's Declaratory Judgment failed to address or consider the **issues of fact** regarding the directive in the policy which states "Item b. (The exclusion) above **does not apply** in the event the animal is

reacting to protect people or property from imminent harm.'" (Emphasis sic.) (Appellant's Brief at 8, quoting Doc. No. 23, Ex. B). We agree.

{¶26} Based on our review of the record, we conclude that, even though Grange Insurance produced evidence that Caesar previously caused bodily injury to a person (or injury to another animal), Hinds responded with evidence demonstrating a genuine issue of material fact that Caesar was reacting to protect people or property from imminent harm. Indeed, Hinds presented evidence creating a genuine issue of material fact whether Caesar was reacting to guard food, a toy, or a dog crate in each of the instances (occurring prior to Hinds's injuries) in which a person or another animal was injured by Caesar.

{¶27} Critically, Wildermuth testified that they "didn't know [Caesar] was going to attack a person like" he attacked Hinds because the other instances were primarily "a food aggression" and Caesar "didn't become aggressive until" the day he attacked Hinds. (Wildermuth Depo. at 44). She testified that "there was just a food aggression"—that is, "Caesar didn't like people being around food" and Wildermuth and Farmwald had to feed Meeka and Milo separately from Caesar because of his food aggression. (*Id.* at 14).

{¶28} Indeed, in response to Kami's injury, Hinds presented evidence that Kami was injured after Kami found Caesar "in the trash can on [a] chicken carcass; and she walked in and said, no * * * , and smacked his butt; and that's when [Caesar] turned around and nipped her arm." (Farmwald Depo. at 29). Likewise, Hinds

presented evidence that Caesar nipped Meeka while the animals were feeding. In particular, Hinds testified that "it was just a food aggression when it happened,"— namely, Caesar "basically just came in there and went after the food and then he went after Meeka." (Hinds Depo. at 26). Similarly, Hinds presented evidence that Caesar was reacting to guard food in the instance that he nipped Milo. Specifically, he presented evidence that "Milo came in the living room with a can of food. [Wildermuth] tried to get it from him. [Milo] nipped at her, so she kind of tried to kick the can away from him; and that's when Cesar [sic] got up and went over to Milo, and then Milo nipped at Cesar [sic]; and that's when he grabbed him." (Farmwald Depo. at 27).

{¶29} Moreover, Hinds presented evidence that Caesar was reacting to guard a dog crate or a toy in the remaining instances in which Wildermuth and the Australian Shepard sustained injuries from Caesar. Specifically, Wildermuth testified that she was injured while she was in the process of putting the dogs in their respective dog crates. Furthermore, Hinds presented evidence that Caesar "bit [the] neck" of the Australian Shepard at the dog park after the "dog took Caesar's ball away from Caesar * * * ." (Hinds Depo. at 30).

{¶30} Consequently, we conclude (based on the facts presented) that genuine issues of material fact remain as to whether the exception to the policy exclusion applies in this case. That is, we conclude that genuine issues of material fact remain

as to whether Caesar was reacting to protect people or property from imminent harm in the instances that he caused bodily injury to a person or injury to another animal.

{¶31} Therefore, Hinds's second assignment of error is sustained.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued in assignments of error one, we affirm the judgment of the trial court. Having found error prejudicial to the appellant herein in the particulars assigned and argued in assignment of error two, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part*
*and Cause Remanded*

**WILLAMOWSKI and WALDICK, J.J., concur.**

**/hls**